IVY C. NANCE, TRADING AS MONTGOMERY HARDWARE COMPANY, v. JOHN KING.

(Filed 3 December, 1919.)

1. **Mortgages—Chattels—Sales—Presence of Property—Void Sales—Accounting—Market Value.**

The foreclosure of a chattel mortgage under the general power of sale ordinarily appearing in such instruments, requires that the property should be sold "with such reasonable care as would produce the best results," and is likened, in some respects, to sales under execution, wherein the property must be present at the time or place of sale, or so near as to afford the bidders an opportunity to examine it and make some estimate of its worth; and when the sale is not accordingly made, the mortgagor or those claiming under him may by his action have it declared void, and hold the mortgagee to account for its market value, unless the former has expressly assented to such sale or in some way has waived his rights concerning it.

2. **Same—Pleadings—Counterclaim.**

Where the mortgagee has taken personal property subject to his mortgage in his action of claim and delivery, and has sold the same under the power of sale contained in the mortgage, but contrary to law by not having the property present at the sale, the defendant mortgagor may set up by counterclaim his right to have the sale declared void, and hold the mortgagee responsible for an accounting for the market value of the property so sold.

3. **Mortgages—Sales—Void Sales—Evidence—Market Value.**

Where a mortgagee is held accountable for the market value of personal property, he sold under a sale void for noncompliance with the law, an answer to a question, "What was the property worth at the time of the

seizure—its reasonable market value?" is not objectionable on the ground that it was testimony of the worth of the property, and not its market value, the answer necessarily being the market value of the property.

### 4. Same—Principal and Agent.

Where a mortgagee is held accountable to the mortgagor of personal property for its market value under a void sale under the power in the instrument, testimony of the bidder for the purchaser at the sale that he had offered to return the property on the payment of the mortgage is incompetent, when it is not shown that the agent for the purchaser had authority to carry the offer into effect, or the condition of the property at the time of the offer, or its deterioration.

### 5. Appeal and Error—Objections and Exceptions—Unanswered Questions.

An exception to a question asked a witness will not be considered on appeal when the expected answer is not made to appear, or its materiality shown.

### 6. Mortgages—Sales—Void Sales—Liens—Credits—Judgments.

The plaintiff in the action seizes under claim and delivery personal property subject to his own first mortgage, and to a second mortgage held by another, sold the same under a void sale, satisfied his own lien, and paid the balance of the purchase price on the second mortgage lien. The defendant mortgagor set up and recovered upon a counterclaim that the market value was in excess of the two liens. *Held,* there was nothing to the plaintiff's prejudice in the judgment allowing him a credit for the amount he had paid on both the mortgages.

CIVIL ACTION, tried before *Harding, J.,* and a jury, at April Term, 1919, of MONTGOMERY.

The action is for claim and delivery of a portable sawmill and other personal property. Plaintiff filed a chattel mortgage only, with power of sale on the property to secure $189.29, and defendant was in default in reference thereto. It also appeared that there was a second unsatisfied note on the property in favor of the Troy Milling Company to secure $100. The property having been seized by ancillary process and delivered to plaintiff, he sold the same at public auction under a general power contained in the mortgage, and the same was purchased by one W. I. Myrick, for the Lexington Grocery Company, at $307. That of this sum, after satisfying plaintiff's debt and costs, etc., plaintiff, on demand of J. W. Lemmons, agent of the Troy Milling Company, paid the remainder ($99.50) to said milling company on the second mortgage held by them on a large portion of the same property.

Defendant admitting the existence of both mortgages as alleged, and there were facts in evidence tending to show that plaintiff had not sold the property seized in the cause as required to do by the law and the obligation of the contract, the testimony, among other things, being to the effect that defendant was not present at the sale, and had no representatives there; that the property was not present at the courthouse in

Troy, where the sale was had, but eleven and one-half miles away; that there were few bidders present, and these had no opportunity to view the property before bidding at the time and place of sale; that by reason of such failure, the property was sold at great sacrifice, and defendant thereupon set up a counterclaim for the actual value of the property, over and above the amount required for plaintiff's debt.

On issues submitted, the jury rendered a verdict that there had been no valid foreclosure by reason of the failure of plaintiff to observe the requirements of the law and his contract concerning the sale.

The actual value of the property at time of sale was $700.

On motion, there was judgment for defendant for the difference between the market value of the property as assessed by the jury and the amount of the mortgages set out in the complaint. Plaintiff accepted, and appealed.

*W. A. Cochran for plaintiff.*
*J. A. Spence for defendant.*

HOKE, J., after stating the case: It is the accepted law in this jurisdiction that in order to a valid foreclosure of a chattel mortgage under a general power of sale ordinarily appearing in the instruments, the property should be sold "with such reasonable care as to produce the best results." Such cases are likened in some respects to sales under execution, and in both it is required that the property be present at the time and place of sale, or so near as to afford bidders an opportunity to examine it and make some fair estimate of its worth. *Barbee v. Scoggins,* 121 N. C., 135-143; *Alston v. Morphew,* 113 N. C., 460; *McNeeley v. Hart,* 30 N. C., 492; *Wormell v. Nason,* 83 N. C., 33; Freeman on Executions, sec. 290.

In *Barbee's case,* our present *Chief Justice,* speaking to the question, said: "The goods were not in plain view, but were in a store 100 or 150 yards from the place of sale, and, moreover, they were sold in lump, which was calculated to make them bring much less than their value. The mortgagor is in the power of the mortgagee, and the Courts require that these sales be made with such reasonable care as to produce the best results," citing *McNeeley v. Hart,* 30 N. C., 492, and *Ainsworth v. Greenlee,* 7 N. C., 470; and in *Alston v. Morphew, supra,* the prevailing rule, and the reasons for it, are set forth by *Associate Justice McRae* as follows:

"The uniform current of decisions in this State, from *Blount v. Mitchell,* 1 N. C., 86, are to the effect that, upon sales by sheriffs or constables of personal property under execution, the property should be present at the sale, and in the possession of the officer, so that immediate

delivery may be made to the purchaser. These requirements are fulfilled, however, if it is in plain view, or so near that it may be personally inspected by all present at the sale who may choose to examine it. The sale 'must be conducted in such a manner that every person who may come up before the articles are knocked down by the auctioneer may see and examine them, so as to enable him to become a bidder if he choose. To hold otherwise would be to give some of the persons present an advantage over others, and thus prevent that fair and open competition which the law so much desires in sales of this kind.' *McNeely v. Hart,* 30 N. C., 492. The reason of the rule is clearly stated in *Ainsworth v. Greenlee,* 7 N. C., 470: 'The constable's authority to sell these goods was derived under a *fieri facias,* the execution of which the law requires to be done in such a manner as that by the sale the property is most likely to command the highest price in ready money. It is evident that for this purpose the bidder ought to have an opportunity of inspecting the goods and forming an estimate of their value, without which it is not to be expected that a fair equivalent will be bid. The presence of the goods, too, in the possession of the officer, to which possession the levy gives him a right, assures the bidders that a delivery will be made to the highest bidder forthwith, and that so far the object of the purchase will be attained without litigation.' "

This being the recognized position, it follows that a sale under the power as ordinarily contained in a chattel mortgage in disregard of this requirement is ineffective as a foreclosure, and the mortgagee who has so disposed of his property may be properly held to account for its market value at the instance and election of the mortgagor, or those claiming under him, unless the latter has expressly assented to such a sale, or in some way waived his rights concerning it.

And there is express decision with us to this effect, that this right of the mortgagor may be made available as a counterclaim in an action instituted by the mortgagee for claim and delivery of the property. *Smith v. French,* 141 N. C., pp. 1-5, defendant's appeal.

The rights of the parties have been determined in accord with these principles, and on careful consideration of the record we find nothing that will justify us in disturbing the results of the trial.

It was objected for error on the issue as to damages that a witness was allowed to state that in his opinion the property was worth $800 at the time of seizure, when he should have given its market value. The question to which the witness answered was, "What was the property worth at the time of seizure—its reasonable market value?" And the answer to the question so framed could only have signified that $800 was its market value. Again, it was objected that in the examination of the witness Myrick, who purchased the property at the sale for his employ-

ers, the Lexington Grocery Company, the court excluded a question whether the witness had not offered to return the property on payment of the two mortgages. It was not shown that Myrick had any authority to carry out that offer, either from plaintiff or his own company. Nor did it appear what was the condition of the property at the time, nor how much it may have deteriorated since the seizure. Indeed, we do not discover, by suggestion or otherwise, what the answer of the witness would have been, and the objection must be overruled.

In the judgment plaintiff has been allowed credit, both for the amount of his own mortgages and that of the Troy Milling Company, and there is nothing to plaintiff's prejudice in this disposition of the matter.

There is no error, and the judgment must be affirmed.

No error. .