In the Matter of VINTAGE PRESS, INC., Bankrupt.

BVA CREDIT CORPORATION, EQUIPMENT LEASING DIVISION, Appellant,

v.

A. L. MULLINS, Trustee in Bankruptcy, Appellee.

No. 76–3832
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

May 27, 1977.

Rehearing Denied July 21, 1977.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Arthur B. Seymour, Atlanta, Ga., for plaintiff-appellant.

J. Timothy White, Atlanta, Ga., for defendant-appellee.

Before AINSWORTH, MORGAN and GEE, Circuit Judges.

AINSWORTH, Circuit Judge:

Appellant BVA Credit Corporation filed a complaint against the bankrupt, Vintage Press, and the trustee in bankruptcy for reclamation of leased personal property. The bankruptcy judge entered an order in favor of the trustee and denying BVA's petition. That ruling was affirmed by the district court, and its order is the subject of this appeal.

The question before us is whether a party can have an enforceable security interest in equipment covered by a lease agreement (intended as security) in which the description, otherwise sufficient, of the equipment includes an incorrect serial number. We hold that a mere error in the serial number does not affect the enforceability of the creditor's security interest.

In 1974, BVA's predecessor, Cavanagh Leasing Corporation, entered into an equipment lease (with option to purchase) with Elcee Printing Company, Inc., Vintage Press' apparent predecessor. The bankruptcy court correctly found that the lease was intended for security and therefore is subject to Article 9 of the Uniform Commercial Code.[1] The equipment, a Miller offset press, was described in the equipment lease between Cavanagh and Elcee as follows: Miller TP, 1968, 4C Perfector Offset Press, model number TP 38, serial number 15489. After the lease was assigned by Elcee Printing to Vintage Press, a new financing statement, showing Vintage Press as the debtor, was filed in Superior Court Records, DeKalb County, Georgia, which described the property as follows:

1 Ea. Miller TP 38, 1968, 4C Perfector Offset Press

THIS EQUIPMENT IS THE SUBJECT OF A LEASE AND FILING IS FOR INFORMATION PURPOSES.

The financing statement did not include a serial number of the equipment.

The printing press which was delivered to Elcee's facility actually bore the serial number 15885, rather than 15489. Thus, two of the five digits in the serial number given in the security agreement were incorrect. Responsibility for the error belonged to the printing press' manufacturer. The equipment which bore serial number 15489 was, in fact, a two-color press located in Oklahoma, while the machine purchased by Elcee,

---

1. Under the lease, the lessee had an option to purchase the property at the end of the lease period for 10% of the original cost of the equipment. The original cost of the equipment (that is, the cost of the basic press) was $100,000. However, total payments under the lease were to amount to over $202,000. Thus, the option could be exercised for $10,000—less than 5% of the gross payout. The bankruptcy judge held that this amount was nominal in comparison to the total lease price.

This finding of a nominal option price triggered the application of Article 9, for section 1–201(37) of the Code provides:

Unless a lease . . . is intended as security, reservation of title thereunder is not a "security interest" . . . . Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease, the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

Ga.Code Ann. § 109A–1–201(37) (1973).

located in Georgia, was a four-color press, serial number 15885. BVA picked up the latter press on March 12, 1975, nine days before Vintage Press filed for bankruptcy.

Section 9–203 of the U.C.C. provides in pertinent part that a security interest is not enforceable against the debtor or third parties unless the debtor has signed a security agreement which contains a description of the collateral. Ga.Code Ann. § 109A–9–203 (1973). In the instant case, the equipment lease serves as a security agreement. As for the sufficiency of the description, "any description . . . is sufficient whether or not it is specific if it reasonably identifies what is described." *Id.* § 109A–9–110.

The bankruptcy judge found that an accurate description of the equipment herein in contention required the stating of the correct serial number because similar presses were in existence and serial numbers were necessary to distinguish one press from another. He therefore held the statement on the agreement of an incorrect serial number to be fatally defective. That conclusion was unfounded and incorrect.

The bankruptcy judge appeared to base his conclusion in part on a letter, admitted into evidence, from the equipment manufacturer, Miller Printing Machinery Company, to BVA. The letter explained that Miller's credit department was responsible for the discrepancy in serial numbers. It was this letter which stated that serial number 15489 was carried by a two-color Miller press in Oklahoma, unlike Vintage's four-color press, located in Georgia and bearing serial number 15885. We need not quote the letter, for it plainly lends no support to the conclusion that the serial numbers were necessary to distinguish the presses. Obviously, the two presses could be told apart as two different models in two different locations. One could make that determination without reference to their serial numbers.

■■■ Moreover, we are unable to agree with the reasoning of the district judge herein in stating:

The Court does not necessarily agree with the bankruptcy judge's determination that a correct serial number is an essential element of an adequate description of the Miller Press. Arguably, if the serial number was completely omitted from the security agreement the description might be deemed sufficient. However, if a serial number is included in the description, then that serial number becomes the most uniquely descriptive ingredient of that description, and an erroneous description is fatal. . . .

This holding ignores the Code's rule of reasonable identification. The problem, we think, is that the court misdirected its attention. The district judge focused on, *inter alia,* the similarity of pieces of equipment produced by the manufacturer. However, this case centers on the equipment located not at the manufacturer's facility, but at the lessee/bankrupt's place of business. The district judge also considered the question of notice to a bona fide purchaser. However, this is a case involving the priority between a secured creditor and a trustee in bankruptcy. In other words, the district judge missed the basic issue in the case, *viz.,* the sufficiency of the description of the collateral.

The Code's draftsmen explicitly rejected the approach taken by the district court. The Official Comment to section 9–110, contained in the uniform version of the U.C.C., states:

Under this rule courts should refuse to follow the holdings, often found in the older chattel mortgage cases, that descriptions are insufficient unless they are of the most exact and detailed nature, the so-called "serial number" test.

U.C.C. § 9–110, Official Comment (West U.L.A.1968). This commentary is in accord with Georgia decisional law. *See Yancey Bros. Co. v. Dehco, Inc.,* 1964, 108 Ga.App. 875, 877 & n. 1, 134 S.E.2d 828, 830 & n. 1. "Merely stating an incorrect serial number will not vitiate the contract if the key [to the identity of the property] is there." *Id.* at 877, 134 S.E.2d at 830. The equipment lease and financing statement provided such a key in the instant case.

Accordingly, we reverse the order of the district court, which affirmed the bankrupt-

cy judge's order that BVA pay the trustee $75,000, which sum constituted the proceeds from the sale of the equipment and which BVA was then holding by stipulation of the parties, and we direct such additional relief as may be necessary to effectuate our decision.

REVERSED.