Harvey J. EGGEMAN, Appellant
(Defendant below),

v.

WESTERN NATIONAL BANK, Lovell,
Wyoming, Appellee (Plaintiff below).

No. 5059.

Supreme Court of Wyoming.

June 18, 1979.

Ross D. Copenhaver, of Ross D. Copenhaver, P. C., Powell, for appellant-defendant.

Rick Anderson, of Darrah & Anderson, Powell, for appellee-plaintiff.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROONEY, Justice.

This is an appeal from an order denying a motion of appellant-defendant to vacate a sheriff's sale of defendant's real and per-

sonal property, which was made pursuant to a foreclosure action brought by appellee-plaintiff. We will reverse and order vacation of the sale.

On January 15, 1973, defendant and his wife gave plaintiff a promissory note in the principal amount of $41,000, and they secured the debt by a mortgage on two adjoining tracts of land near Lovell. The two tracts were purchased at different times. On one was a building, which was used by defendant in his business, known as Lovell Machine. The other tract was vacant.

On April 25, 1975, defendant gave plaintiff another note in the principal amount of $8,625, which was secured by collateral described only as "inventory and accounts receivable" in the note, and as follows in the security agreement:

"(a) All of debtor's inventory including all goods, merchandise, raw materials, goods in process, finished goods and all other tangible personal property now owned or hereafter acquired and held for sale or lease or furnished or to be furnished under contracts of service or used or consumed in debtor's business, * * * and in contract rights with respect thereto and proceeds of both. * * *

"(b) All accounts, notes, drafts, chattel paper, acceptances and other forms of obligations and receivables now or hereafter received by or belonging to debtor for goods sold by it or for services rendered by it, all guaranties and securities thereof, hereinafter called the 'receivables', all right, title and interest of debtor in the merchandise which gave rise thereto including the right of stoppage in transit, and all rights of debtor earned or yet to be earned under contracts to sell goods or render services and in the proceeds thereof, including all accounts receivable listed and described on Exhibit A attached hereto and by this reference made a part hereof."

There was no Exhibit A.

Defendant defaulted in payments on both notes, and plaintiff filed a complaint con-taining two claims for relief. One was against defendant for judgment on the balance due on the $8,625 note and requesting sale of the collateral in satisfaction thereof. The other was against defendant and his wife on the balance due on the $41,000 note and requesting sale of the mortgaged real property in satisfaction thereof. A copy of each note, a copy of the mortgage, and a copy of the security agreement[1] were attached to the complaint. The answer admitted the making and delivery of the notes and denied the other allegations of the complaint.

The judgment recited that "it appearing to the Court" that defendant and his wife "authorized" their counsel to stipulate to the entry of judgment in the amount of $42,197.04 against them, specifically: (1) in amount of $38,431.05 against defendant and his wife, and that the "premises covered by the mortgage * * * be decreed sold *according to law*; that the proceeds of the sale be brought into the Court and applied * * * [to] the amount due Plaintiff; and that Plaintiff have judgment *and execution* against the Defendants, and each of them, for any deficiency * * *" (emphasis added); and (2) in the amount of $3,765.99 against defendant, and that "the lien represented by the security agreement * * * be foreclosed; that the collateral listed in the security agreement be sold *under and pursuant to the judgment of this Court* and the proceeds of such sale be applied toward the satisfaction and payment of the lien," (emphasis added); and judgment for deficiency to be rendered against defendant. There was no reference to the disposition to be made of any amount received from the sale in excess of the debt.

After such recitations in the judgment, the court ordered that "Plaintiff have Judgment according to that stipulation previously entered into between the parties hereto and as is set out previously in this Order." It was further ordered that defendant and

---

1. The security agreement reflects that it is subject to additional provisions set forth on the reverse. Only one page is in the record on appeal—the reverse is not there and presumably was not attached to the complaint.

his wife be barred from asserting any right to the two tracts of real property except for right of redemption (each tract was specifically described), and that defendant be barred from asserting any rights to the inventory and accounts receivable. Finally, it was ordered that the title "to the real property, inventory and accounts receivable herein described" be quieted in plaintiff, subject only to the rights of redemption, and "Plaintiff shall have foreclosure thereon *as provided by law*." (Emphasis added.)

The stipulation was not part of the record as designated for appeal. We must presume that the stipulation, which amounted to a confession of judgment, was made pursuant to §§ 1–16–201 and 1–16–202, W.S. 1977, which provide that the warrant of the attorney confessing judgment be filed with the clerk of court. This is mentioned only to indicate the intention of the legislature to insure protection of the debtor when judgment is of the consent type.

A Notice of Foreclosure Sale of defendant's property was duly published. It read in part:

"* * * on January 20, 1978, at 11:00 o'clock A.M., at the front door of the courthouse at Basin, Big Horn County, Wyoming, the Sheriff of Big Horn County will sell the above-described real property, inventory and accounts receivable or so much thereof as may be necessary to satisfy Plaintiff Western National Bank's judgment with interest and costs, to the highest bidder."

The two tracts of real property were described separately in this notice—as they were in the mortgage.

At the sale, both tracts of real property and the inventory and the accounts receivable were offered only as a whole and in one group. They were sold in that fashion for the high bid of James T. Frost in the amount of $67,500.

2. Section 34 21–960(d), W.S.1977:
   "(d) If the security agreement covers both real and personal property, the secured party may proceed under this part as to the personal property or he may proceed as to both the

The sheriff tendered to defendant the amount in excess of the total judgment less expenses. At first, defendant refused to accept it. Then he consented to it being deposited by the sheriff in defendant's bank account. He expressed his willingness to return the same if the sale is vacated.

The inventory and accounts receivable were never listed or itemized. A list of the items taken into Frost's possession was attached to an affidavit of defendant. Most of the items listed thereon were equipment and supplies rather than inventory and accounts receivable. The term "inventory" does not include "equipment." Section 34–21–909(a)(ii) and (iv), W.S.1977.

Defendant contends that the remedy taken by plaintiff with reference to the default of the $8,625 note and of the security agreement was not pursuant to law, and he contends that the sale of the real property was illegal inasmuch as each tract was not separately offered for bid. Plaintiff contends that the sale was proper as a *judicial* sale, wherein the several requirements of a sale by execution under a judgment are not applicable.

### SALE OF INVENTORY AND ACCOUNTS RECEIVABLE

▆ Under law, there are five principal remedies given to the secured party on default of the terms of a security agreement by the debtor. Since none of the remedies were properly used in this case, the sale of the personal property was not proper. The five remedies are:

1. Use of the real estate mortgage foreclosure procedures if the security agreement covers both real and personal property.[2] Although both real and personal property were involved in this action, the security agreement does not cover real property. Therefore, this remedy is not available to plaintiff.

real and the personal property in accordance with his rights and remedies in respect of the real property in which case the provisions of this part do not apply."

2. With reference to accounts receivable, as here, collect the same from those obligated thereon.[3] Plaintiff did not choose to pursue this remedy.

3. Any special remedy provided in the security agreement.[4] This security agreement did not set forth any special remedy.[5]

4. Take possession of the collateral without judicial process[6] and either accept it in full satisfaction[7] or sell it.[8] The notice required for acceptance in full satisfaction was not here given. Here possession was not taken without judicial process, and the sale was made before plaintiff took possession. A sale under this remedy must be commercially reasonable. Section 34–21–963(c), W.S.1977. This is the remedy most commonly used. The usual reasons for not using it are: (a) inability to secure peaceable possession of the collateral, and (b) desire to be able to proceed against assets of the debtor, other than the collateral. Plaintiff did not use this remedy.

5. Take a judgment on the underlying obligation, and proceed under the judgment.[9] This seems to be the remedy attempted in this case. The procedure for this remedy is not set out in the Uniform Commercial Code, i. e., § 34–21–101, et seq., W.S.1977. The usual procedure for enforcement of judgments for money is set out in § 1–17–101, et seq., W.S.1977. Usually the judgment is executed on by issuance of a writ of execution. The sheriff levies the writ upon the goods and chattels of the debtor, taking them actually or constructively into his possession. The various items levied upon are then identified and are subject to valuation and inspection. If necessary, the sheriff then holds an execution sale. Such procedure is anticipated by the Uniform Commercial Code.[10]

3. Section 34–21–961(a), W.S.1977, reads in part:
"(a) * * * on default the secured party is entitled to notify an account debtor or the obligor on an instrument to make payment to him whether or not the assignor was theretofore making collections on the collateral * * *."

4. Section 34–21–960(b), W.S.1977, reads in part:
"(b) After default, the debtor has the rights and remedies provided * * * in the security agreement * * *."

5. See footnote 1 with reference to only a portion of the security agreement being in the record.

6. Section 34–21–962, W.S.1977, reads in part:
"Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. * * "

7. Section 34-21–964(b), W.S.1977, reads:
"(b) In any other case involving consumer goods or any other collateral a secured party *in possession may, after default, propose to* retain the collateral in satisfaction of the obligation. Written notice of such proposal shall be sent to the debtor and except in the case of consumer goods to any other secured party who has a security interest in the collateral and who has duly filed a financing statement indexed in the name of the debtor in this state or is known by a secured party in

possession to have a security interest in it. If the debtor or other person entitled to receive notification objects in writing within thirty (30) days from the receipt of the notification or if any other secured party objects in writing within thirty (30) days after the secured party obtains possession the secured party must dispose of the collateral under section 9–504. In the absence of such written objection the secured party may retain the collateral in satisfaction of the debtor's obligation."

8. Section 34–21–963(a), W.S.1977, reads in part:
"(a) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral * * *."

9. Section 34–21–960(a), W.S.1977, reads in part:
" * * * He may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure. * * "

10. Section 34–21–960(e), W.S.1977, reads:
"(e) When a secured party has reduced his claim to judgment the lien of any levy which may be made upon his collateral by virtue of any execution based upon the judgment shall relate back to the date of the perfection of the security interest in such collateral. A judicial sale, *pursuant to such execution,* is a foreclosure of the security interest by judicial procedure within the meaning of this section, and the secured party may purchase at the sale *and thereafter hold the collateral free of*

A writ of execution was not issued or levied in this case. The sheriff did not take possession of the goods, actually or constructively, and they were not otherwise specifically identified or evaluated. The usual execution and levy procedure was not followed.

■ But plaintiff contends that a judicial sale, as distinguished from an execution sale, was here held. A judicial sale is proper under the Code [11] and under the remedy here under discussion. However, the judicial sale attempted in this case was not properly mandated or conducted. Inasmuch as the property to be sold was not definitely or accurately described in the judgment and at the sale; inasmuch as it was not taken into the sheriff's possession prior to the sale or was not otherwise specifically identified or made subject to evaluation as to quantity and quality prior to the sale, a jurisdictional defect existed and the sale was void.

■ Usually, the subject of judicial sales is real property, but the requirements and procedure are the same for both real and personal property. The personal property is here described only generically in the note, the security agreement and the judgment.[12] The generic description is sufficient for a note or security agreement if it is adequate to make possible the identification of the thing given in security by means of reasonable effort and inspection. *Matter of Vintage Press, Inc.*, 5th Cir., 552 F.2d 1145 (1977); *First State Bank of Nora Springs v. Waychus*, Iowa, 183 N.W.2d 728 (1971); *James Talcott, Inc. v. Franklin Nat. Bank of Minneapolis*, 292 Minn. 277, 194 N.W.2d 775 (1972). The generic description in the security agreement here under consideration is sufficient for that purpose. An inspection of the books and records of

defendant, including invoices, purchase documents and sales documents, and an examination of the raw material and other items held by defendant for consumption in his business or held for sale or lease will specifically identify his accounts receivable and his inventory.

■ While such generic description may be sufficient in the security agreement, it is not always sufficient in a judgment directing a judicial sale or in the notice of a judicial sale. Such judgment must specify the property to be sold or it must set forth the means by which it can be specifically identified before the sale. *Withington v. Shay*, 47 Cal.App.2d 68, 117 P.2d 415, reh. den. 47 Cal.App.2d 68, 119 P.2d 1 (1941); *American Dirigold Corp. v. Dirigold Metals Corp.*, 6th Cir., 125 F.2d 446 (1942); *Arapian v. Rice*, 5th Cir., 296 F. 891 (1924); *Ross v. Adams*, Ky., 13 Bush's Rep. 370 (1877). The opportunity must be supplied before the sale to make specific the "possible" identification under the generic description in the security agreement, and the judgment must set forth the method for doing so.

■ In an execution sale, the sheriff has the obligation to meet the requirement that "the property to be sold must be adequately described and specifically identified or pointed out to the bidders; there should be no uncertainty as to just what property is being sold." 30 Am.Jur.2d, Executions, § 341, p. 647. In an execution sale, the sheriff acts under the writ of execution on all of the property of the debtor not exempt by law as is necessary to satisfy the judgment. His actions in this respect are circumscribed by statutes, and he is subject to amercement. Section 1–24–101, et seq., W.S.1977.

any other requirements of this article." (Emphasis added.)

11. See footnote 10.

12. The variations in the descriptions contained in the note, the security agreement and the judgment have been set out previously. The notice of sale described the inventory and

accounts receivable as those "on the premises above-described." The notice of sale also differs from the judgment in that it proclaims the sale to be of "real property, inventory and accounts receivable *or so much thereof as may be necessary*" to satisfy the judgment. The emphasized portion of the quotation was not in the judgment.

"One of the characteristics of a judicial sale is that the court's decree of sale acts upon specifically described property. The decree must judicially identify the property to be sold, and describe it definitely and accurately, so that it appears, from the decree and from the deed through which the purchaser at a judicial sale claims, that the title to the property is in him. The officer conducting the sale must be able to identify the property from the description contained in the decree, and the purchaser can only be put in possession of the land definitely described in the deed. Such adjudications require the action of the court; a reference to a master to ascertain and report the facts is not sufficient. Also, an order or decree of sale is erroneous if it purports to confer on the officer designated to conduct the sale authority to exercise discretion in selecting the property to be sold." 47 Am.Jur.2d, Judicial Sales, § 45, p. 333.

▆ The judgment in this case only directed that the sale be "pursuant to judgment of this court." [13] It did not prescribe the terms and mode of sale as is required for a fair and proper judicial sale.

"The distinctive characteristics of a judicial sale are that it must be the result of a judicial proceeding; it must be based upon an order, decree, or judgment directing that the property be sold, as distinguished from a judicial assent to the sale of property under statutory provisions authorizing certain sales by fiduciaries; and it must be made by the court or by its direction upon the terms and in the mode provided by the decree or order, which of course must conform with any pertinent statutory provisions regulating judicial sales * * *. Other characteristics of judicial sales are that the court's decree of sale acts upon specifically described property, which, being actually or

constructively in the custody of the court, need not be appropriated by levy or other seizure, and the sale must be for money, either in cash or in deferred payments, unless the interested parties agree otherwise, since the usual purpose of a judicial sale is to substitute the proceeds of the sale for the actual property itself in adjudicating the rights of the parties in reference to the subject matter of the suit. "Finally, a judicial sale must ordinarily be reported to and confirmed by the court which ordered it. In short, a judicial sale is a judicial act, and in making such a sale, the court stands as the vendor in the transaction." 47 Am.Jur.2d, Judicial Sales, § 2, pp. 300, 301.

As an example of the necessity for the debtor to know before the sale that which is being sold and for the bidders to know before the sale that for which they are bidding, the "inventory" being offered could consist of no goods at all—or it could consist of articles of a very high quality or unusually large quantity. If these facts were unknown before the sale, the bidder could be paying for nothing—or the debtor could receive a low price for the goods because the bidders lacked knowledge of the high quality or large quantity of the items sold.

Another example is in the case before us. The list of articles in the purchaser's possession as a result of the sale includes such things as micrometers, seven cases of health food, sets of scaffolding, a cutting torch, a steam cleaner, an air compressor, a deep-freeze, an $8 \times 38$ foot trailer house, six boxes of winter underwear, and many more items which are obviously not inventory for a machine business.[14]

▆ A judicial sale cannot be held in a "grab bag" fashion. Such would not be

13. With reference to the real property, the judgment directed that it be sold "according to law." The intent may have been to direct the sale to be held after execution. That such was the intent can be supported by the fact that the judgment directed the plaintiff to "have judgment *and execution*" with reference to the real property. (Emphasis added.)

14. This sale was held on the courthouse steps, not at the place at which the items were located. There was no provision for inspection before the sale. The bidder did not know the quantity or quality—even in general terms—of the items he was bidding for purchase.

commercially reasonable. All parties to the sale must have an opportunity to see and evaluate the goods being sold. See 69 Am. Jur.2d, Secured Transactions, § 610, pp. 513, 514; *Manhattan Taxi Serv. Corp. v. Checker Cab Mfg. Corp.*, 253 N.Y. 455, 171 N.E. 705 (1930); *Barbee v. Scoggins*, 121 N.C. 135, 28 S.E. 259 (1897); *Nance v. King*, 178 N.C. 574, 101 S.E. 212 (1919). The judgment can direct that the sale be held at the place where the items are located, or it can direct a time and place before the sale at which the items can be inspected. Some means must be provided by which the items to be sold can be identified specifically, or the items must be identified specifically and not generically in the judgment.

Since this judgment and the sale resulting therefrom were deficient in these respects, the sale of personal property was void and must be vacated.

"A successful attack on a judicial sale may be made on jurisdictional grounds * * * because the property to be sold is not sufficiently described or identified in the pleading or in the decree. * * *" 47 Am.Jur.2d, Judicial Sales, § 11, p. 308. See *Tibbals v. Graham*, 50 Wyo. 277, 61 P.2d 279, reh. den. 50 Wyo. 277, 62 P.2d 285 (1936), reh. again den. 51 Wyo. 350, 66 P.2d 1048 (1937); *Hood v. Cowdy*, 252 Ala. 471, 41 So.2d 181 (1949); *Arnold v. Joines*, 50 Okla. 4, 150 P. 130 (1915).

### SALE OF REAL PROPERTY

We need not consider defendant's contention that the sale of real property was defective because it was made by offering the same as a whole and not separately by tracts. This because the sale of the real property was made in one package with the sale of the personal property. Even if the offering of the real property as a whole was proper, there is no means by which the proceeds given for the real property can be separated from that given for the personal property. It would be improper to arbitrarily assign a portion of the money received in the sale to the sale of personal property, and thus approve the sale of the real property for the balance. Since this separation cannot be made and since the sale of the personal property is void, the entire transaction must fail.

The order of the trial court overruling the motion to vacate the sale is reversed, and the case is remanded with instructions that an order be entered directing defendant to return to James T. Frost, through the court, the amount deposited to defendant's account by the sheriff, and that the sale then be vacated. The trial court may direct further proceedings, whether by judicial sale or by execution, as is appropriate, all in conformance with this opinion.

Reversed and remanded.