James **FROST** and James Frost d/b/a Frost Construction Company, and Frost Construction Company, a corporation, Appellants (Defendants),

v.

Harvey J. **EGGEMAN** and Linda B. Eggeman, Appellees (Plaintiffs).

No. 5540.

Supreme Court of Wyoming.

Dec. 23, 1981.

Lawrence A. Yonkee, Redle, Yonkee & Arney, Sheridan, signed the brief and appeared in oral argument on behalf of appellants.

Ross D. Copenhaver, Copenhaver & Kahl, Powell, signed the brief and appeared in oral argument on behalf of appellees.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

RAPER, Justice.

This case is the product of a dispute between a judgment debtor and the purchaser of the debtor's property at a judicial sale which was later vacated by this court and the case remanded with instructions, *Eggeman v. Western National Bank*, Wyo., 596 P.2d 318 (1979). From a district court's order reducing the purchaser's claim against the debtor for the purchase price with interest and the cost of taxes, insurance, and improvements, by the rental value of the property for the length of the purchaser's occupancy and an amount representing the personalty he was found to have converted, purchaser appeals. He raises, basically, two issues on appeal. First, he challenges the district court's holding in connection with the alleged conversion of personalty. Here his charge of error is threefold: (1) he contends that the debtor failed to establish all the elements of a conversion necessary for when the converting party had rightfully obtained possession; (2) the debtor failed in his burden of proof; and (3) the value of the converted property was never properly proved. The second principal issue involves the district court's award to the debtor of rent for the time that the purchaser "rightfully" occupied the premises until reversal by this court in *Eggeman*, supra.

We will affirm.

I

On January 20, 1978, the Big Horn County Sheriff conducted a foreclosure sale of certain real property, inventory, and accounts receivable owned by Harvey Eggeman in order to satisfy a judgment held against him by the Western National Bank. The purchaser at the sale was James Frost, d/b/a Frost Construction Company, appellant. Eggeman challenged the validity of that sale in the district court. In *Eggeman*, supra, this court overturned the sale as invalid for fundamental procedural infractions and ordered any surplus proceeds on deposit returned to Frost subject to the outcome of the litigation.

Meanwhile Frost had taken possession of the property on or about June 6, 1978. Observing that an air compressor had been removed from the premises, Frost informed Eggeman that he could not pick up any remaining personal effects until he brought Frost the air compressor. Frost claimed that the compressor was a part of the building and that thus, having purchased the building, he was entitled to the compressor too. Finally, Frost discovered where the compressor was being kept. By way of self-help, he went there, picked it up, and took it back to the shop where he had it installed. Some of the property left behind by Eggeman was returned to him, while some of it never was.

On October 26, 1978, Eggeman initiated a replevin action against Frost. The subject of the suit was the air compressor and other items of personalty which, altogether, were valued in the complaint at $8,510.00.

On February 21, 1980, after this court's decision in *Eggeman*, supra, Eggeman filed another action against Frost. In this complaint Eggeman claimed among other things unlawful conversion of personal property valued at $20,000.00. He also sought rent for the three months that Frost retained possession of the premises following the vacation of the foreclosure sale.

Both of Eggeman's actions against Frost were consolidated for trial to the court along with the accounting ordered following the vacation of the foreclosure sale. On May 28, 1981, judgment was rendered as follows:

"1. Frost Construction Company, as purchaser at a subsequently vacated judicial sale, is entitled to and shall have a lien upon the property purchased at such sale for the following amounts:

| "Purchase Price | $67,500.00 |
| Interest | $17,162.08 |
| Taxes | $ 3,006.09 |

| Insurance | $ 1,631.00 |
| Improvements | $ 4,903.44 |
| TOTAL | $94,202.61 |

"less the reasonable rental value of the property during the time that Frost Construction Company was in possession of such property, which is in the amount of $21,600.00; and less the sum of $24,270.19, being the amount of the purchase price re-paid to the purchaser at the time the sale was vacated.

"2. Harvey J. Eggeman shall have and recover of and from James Frost and Frost Construction Company the sum of $17,421.04 as the reasonable value of property of Harvey J. Eggeman converted by James Frost and Frost Construction Company to their own use, which amount shall be offset against the amount due to Frost Construction Company as hereinabove setforth [sic]."

## II

■ The first issue on appeal concerns the district court's decision to hold Frost liable for conversion. Conversion occurs when a person treats the property of another as his own and, in so doing, denies the true owner the enjoyment of his rights as owner. *Western National Bank of Casper v. Harrison*, Wyo., 577 P.2d 635 (1978). In order for a plaintiff to recover damages for conversion, he must establish that (1) he had legal title to the converted property; (2) he either had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff his rights to use and enjoy the property; (4) in those cases where the defendant lawfully, or at least without fault, obtained possession of the property, the plaintiff made some demand for the property's return which the defendant refused; and (5) the plaintiff has suffered damage by the loss of the property. The damages awarded are determined by the value of the property converted. If disputed, the plaintiff bears the burden of proof. *Satterfield v. Sunny Day Resources, Inc.*, Wyo., 581 P.2d 1386, cert. denied 441 U.S. 938, 99 S.Ct. 2153, 60 L.Ed.2d 1040 (1978).

■ Frost contends Eggeman failed to carry his burden of establishing the elements necessary to recover for a conversion. In particular, Frost first points a finger at the fourth element which requires that where the defendant lawfully obtained possession, the plaintiff must have made a demand for the property's return and the defendant refused the demand.

This court discussed the demand-and-refusal requirement in *Satterfield v. Sunny Day Resources, Inc.*, supra. There it was said: " * * * Demand and refusal are merely evidential and need not be shown where another independent act of conversion is in evidence. * * * " 581 P.2d at 1389.

Here there was a plethora of evidence establishing other independent acts of conversion. Frost informed Eggeman he could not come back to the premises in order to retrieve any more of his stuff. Frost went out, tracked down the air compressor, and then had it hauled back to the building. Amongst other things, he used a deep freezer which Eggeman had left behind and sold scrap iron he found on the premises. These are all according to Frost's own testimony. Clearly, then, the demand-and-refusal element was satisfied by the evidence.

■ On the matter of damages, Frost argues that Eggeman failed to prove the fair market value of converted property. It is the burden of a claimant in a conversion action to establish that he was in fact damaged by the loss of property. *Satterfield v. Sunny Day Resources, Inc.*, supra. Further in order to be entitled to recover his actual damages, the claimant must provide some competent evidence of the property's fair market value at the time and place of conversion. *International Distress Signals, Inc. v. McDowell*, Wyo., 519 P.2d 224 (1974); *Suchta v. O.K. Rubber Welders, Inc.*, Wyo., 386 P.2d 931 (1963).

■ In this case during his testimony in chief, Eggeman used a list which set out various items he claimed were converted by Frost and an estimation of the value of

each. Eggeman testified that he drew up the list with the assistance of a friend of his. During cross-examination appellant's counsel asked to see it and then offered it in evidence as appellant's exhibit. Appellant never objected to the values there shown or offered any conflicting evidence of value. This indicates there was no dispute as to value. At least since no objection was made, we apply Rule 103(a)(1), W.R.E.:

"(a) Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

"(1) In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; or

\* \* \* \* \* "

The facts of this case differ substantially from the case of *International Distress Signals, Inc. v. McDowell,* supra. There this court reversed because the claimant offered absolutely no evidence of the market value. Though the evidence in this case may be of a type readily capable of being impeached, it at least satisfied Eggeman's burden of providing some evidence of market value and getting the question of value to the trier of fact. As a result, we are bound by the determination of the district court as fact finder. In *Wilcox v. Herbst,* 75 Wyo. 289, 295 P.2d 755 (1956), it was held that an owner's testimony as to value is not admissible merely because he is the owner; he must have had an opportunity to know what the value was. Since no objection was made, we need not consider the application of Wilcox.

### III

The final issue raised by Frost concerns the district court's award to Eggeman of the property's rental value for the period of time Frost, as a bona fide purchaser, possessed the premises between the time of the district court's judgment and this court's mandate in *Eggeman,* supra, plus

the time lag thereafter to the actual vacation. No Wyoming case law exists on point. The trial judge in his letter opinion accurately summarized the law:

"While the purchaser is entitled to recoupment of any improvements made to the property, he is also accountable for the reasonable value of its use during the time it was in his possession. *Lytle v. Payette-Oregon Slope Irrigation District,* 175 Or. 276, 152 P.2d 934, 939 (1944). The weight of authority appears to be that the basis of the purchaser's liability is the 'fair' or 'reasonable' rental value of the property. Annot., 156 A.L.R. 906, 912 (1945). Rents actually received are a factor to be considered, but are not conclusive. Id. p. 913. \* \* \* "

We hold this to be the controlling rule in this jurisdiction.

Frost entered the land following his purchase at the judicial sale believing he was the owner. He was there under color of law until September 7, 1979 when, pursuant to this court's decision, the district court vacated the judicial sale. However, he remained in possession of the property thereafter until December 8, 1979, three months, a period during which he knew his possession was wrongful. He should be held liable for reasonable rent for his total occupation of eighteen months. The district court's award of rent totaling $21,600 for eighteen months indicates that it had found the reasonable rental value of the whole building to equal $1,200 per month.

The justification for the application of that rule is readily apparent in the situation before us and leads to a fair result. Neither Frost nor Eggeman was responsible for the faulty manner in which the sale was conducted but both were led into a position of detriment. Frost parted with the purchase price. Eggeman lost the use of his building and was put out of business, but Frost had the benefit of possession, renting part to another and using the rest for his business which he conducted in the name of Frost Construction Company. Eggeman has been unable to sell or use the building.

We have followed up the A.L.R. citation, set out by the trial judge[1] through the A.L.R. Blue Book of Supplemental Citations and can find no change in the rule, either there or in our other research. Generally speaking, in the absence of some cause for variation, when a judicial sale is set aside, the court will undertake to restore the status quo so far as practicable under the circumstances. In such case every effort must be made to do complete justice and require the seller to account for money received and the defeated purchaser to account for the use of or rents and profits received from the land. Fundamental justice also requires that the purchaser be compensated for proper expenses in improving and preserving the property. *Varnell v. Lee*, 236 Iowa 445, 19 N.W.2d 205 (1945).

The lead case to Annot., A.L.R., supra is *Lytle v. Payette-Oregon Slope Irrigation District*, 175 Or. 276, 152 P.2d 934, 939, 156 A.L.R. 894, 901 (1944), where a judicial sale was vacated. The rule was well laid out:

"In addition to restoration of the specific property, the judgment debtor may be allowed to recover compensation for being deprived of the use thereof, less expenses necessarily incurred in its protection, and disbursements for taxes and other liens. [Citation.] The obligation of the judgment creditor, in such cases, is similar to that governing an accounting by a trustee under an implied trust. [Citation.] Complete restitution should include the reasonable rental value, or the rents, issues and profits of the premises for the period during which the judgment debtor was deprived of possession. [Citations.] Recovery, however, is not necessarily limited to the amount of rent received by the judgment creditor, but may be based upon the fair and reasonable value of the use of the land. [Citation.] Where the creditor has rented the land to others, no doubt he would be liable to account only for the rents received, as it

is said that restitution is usually limited to what has actually been received and retained by the creditor for his own benefit. [Citation.] Where, however, he has, as in this case, simply kept the judgment debtor out of possession, but has himself derived no benefit from it, we think that the debtor's right of complete restitution should ordinarily include compensation for the fair and reasonable value of the use of the land, considering its condition and the purposes for which it was adapted. [Citation.]"

The posture of Frost is even more compelling here because he actually used the property. The trial court's judgment allows him credit for his expenses such as interest on his purchase money, taxes paid, cost of insurance and improvements.

*Lytle*, supra, relied strongly on § 74, Restatement of the Law, Restitution (1937):

"A person who has conferred a benefit upon another in compliance with a judgment, or whose property has been taken thereunder, is entitled to restitution if the judgment is reversed or set aside, unless restitution would be inequitable or the parties contract that payment is to be final; if the judgment is modified, there is a right to restitution of the excess."

To that we should add § 157, Restatement of the Law, Restitution (1937):

"(1) A person under a duty to another to make restitution of property received by him or of its value is under a duty

"(a) to account for the direct product of the subject matter received while in his possession, and

"(b) to pay such additional amount as compensation for the use of the subject matter as will be just to both parties in view of the fault, if any, of either or both of them.

"(2) The rule stated in Subsection (1) is applicable to an action brought solely to recover the income or value of the use of

---

1. The full citation is 156 A.L.R. 905, "Liability for use and occupation, or rents and profits, of purchaser at execution or judicial sale who is required to restore property because of reversal

or vacation of judgment or sale thereunder." Subsection III, beginning at page 911, in particular.

the subject matter, or interest upon the amount of its value."

Here there was no fault by either Frost or Eggeman, so that factor has no application in our disposition.

Frost asserts that Eggeman is entitled only to actual rental in the sum of $3,600, received by Frost from another. Such a rule does not have common acceptance. As said in *Wallace v. Berdell*, 101 N.Y. 13, 3 N.E. 769 (1885):

"It would be manifestly unjust to confine the owner of property withheld from him to the rents actually received by the party required to make restitution. The owner should have either those rents, or the rental value, as may be just under the circumstances. * * *" 3 N.E. at 770.

While the rule we establish is of long standing, its fairness has apparently needed no change.

We can find no error.

Affirmed.