FARMERS STATE BANK OF PARKSTON, Respondent
v.
OTTEN, et al., Appellant

(204 N.W.2d 178)

(File No. 10884. Opinion filed February 14, 1973)

**Robert L. Jones**, Sioux Falls, for defendant and appellant, George Otten.

**Horstman & Braley**, Parkston, for plaintiff and respondent, Farmers State Bank of Parkston, and defendant and respondent, Raymond Weiss.

BIEGELMEIER, Presiding Justice (on reassignment).

Defendant, George Otten, and one George Weiss signed a note to plaintiff bank for $2,200. To secure this loan Otten executed a security agreement to the bank on a tractor and trailer. On April 4, 1969, Otten was in default in payment of the loan, whereupon the bank, under its security agreement, and Weiss (without any right) took physical possession of the collateral and thereafter retained possession of it. No proceedings were ever taken for sale or other disposition of the collateral under our Uniform Commercial Code—Secured Transactions, herein cited as UCC. See SDCL 57-35 through 57-39.

On July 17, 1969, the bank commenced this action on the note against Otten only. The complaint did not mention either the security agreement or that the bank had taken possession of the collateral. On September 17, 1969, prior to trial, Weiss, as cosigner of the note, paid the bank the amount due, and as he had then been made a party-defendant he made claim against Otten for the amount so paid. Otten cross-claimed against Weiss and the bank for damages resulting from the taking possession of the collateral and failing to comply with the provisions of the UCC. The action was tried to the court on March 4, 1970, at which time the bank and Weiss were still in possession of the property seized.

Following the trial, the court, on May 27, 1970, entered a general judgment for Weiss against Otten for $2,051.25 based on the note without any mention of a lien on any property of the security agreement. This was more than 13 months after April 4, 1969, when the bank and Weiss took possession of the collateral. Thereafter, the property, having been in possession of the bank and Weiss since April 4, 1969, was levied on and sold on July 10, 1970, to satisfy the judgment which, with costs, totaled $2,132.49.

On appeal the defendant Otten has assigned as error the dismissal by the lower court of the cross-claim for damages. It is Otten's contention that the delay or rather the failure of the bank and Weiss to make any disposition of the collateral after they took possession of it was contrary to the law governing foreclosure of security interests and they are therefore liable for the loss sustained by him.

By SDCL 57-39-8 a secured party has on default the right to take possession of the collateral and by SDCL 57-39-9 has the right to sell, lease or otherwise dispose of it. SDCL 57-39-11 provides, with exceptions not here applicable, that disposition of the collateral may be made by public or private proceedings; that sale may be as a unit or in parcels

"and at any time and place and on any terms but every aspect of the disposition including the method, manner,

time, place and terms must be commercially reasonable. * * * reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, * * *. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale."

The other "intended disposition" in this section must include that mentioned in SDCL 57-39-15, which permits a secured party in possession to propose to retain the collateral in satisfaction of the obligation, in which event written notification of such proposal must be sent to the debtor and if he objects thereto in writing within 30 days the secured party must dispose of the collateral under SDCL 57-39-9 through 57-39-13. The latter includes § 57-39-11, quoted supra, which provides the guidelines for sales under a security interest.

We believe the intent of these sections is that the secured creditor has two options—he may proceed initially to sell the property after giving the notice, etc. as provided by SDCL 57-39-11 or propose to retain the collateral in satisfaction of the obligation giving notice thereof as provided by SDCL 57-39-15. If no objection be made to the latter proposal the creditor becomes owner of the collateral and the debt is satisfied. If objection be made, however, the creditor must proceed under SDCL 57-39-11 as he might have done initially.[1] When the creditor complies with that section the debtor is liable for the deficiency, if any. See SDCL 57-39-10. This is the same conclusion voiced by the author of "FINANCING UNDER ARTICLE 9 OF THE IOWA UNIFORM COMMERCIAL CODE", 17 Drake L.Rev. 143 at 167-8, where it is stated:

---

1. This construction of these statutes, i.e., the requirements of notice of sale or notice that the security is to be retained in satisfaction of the debt, obviates the necessity of a decision on the constitutionality of proceedings without such notice which may affect rights of a party. Cf. Fuentes v. Shevin, 1972, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556, and cases therein cited.

> "Upon default, the secured party has the right to possession of the collateral * * *. Unless the collateral is perishable [or of a type not here present] * * * the secured party *must* dispose of the property by public or private proceedings (which must be 'commercially reasonable' in every respect) *upon notice to the debtor* * * * or the secured party *must* elect to retain the goods in full satisfaction of the debt upon notice to the debtor * * *." (emphasis supplied)

A creditor who takes possession under SDCL 57-39-8 must pursue his claim under one of the above described options, and failure so to do subjects him to damages. If the bank and Weiss failed to comply with the law governing foreclosure of security interests in making a disposition of the collateral they have subjected themselves to liability to Otten for damages.

This Court in Erickson v. The Carlberg Co., 1929, 54 S.D. 296, 223 N.W. 195, recognized the general rule that when a mortgagee in attempting to foreclose fails to comply with the requisites of the statute he becomes liable for the damages sustained.

The duty to make a disposition of the collateral within a reasonable time and in a reasonable manner is imposed on the secured party to require him to act diligently to protect the interests of the debtor. Duties of the creditor are so well stated in Michigan National Bank v. Marston, 1970, 29 Mich.App. 99, 185 N.W.2d 47, that we quote extensively from it.

> "This does not mean, however, that the bank owes no duties to defendant with respect to the collateral. See also, M.C.L.A. § 440.9207 (Stat.-Ann.1964 Rev. § 19.9207). It would be unfair to allow a creditor to deprive the debtor of the possession and use of the collateral for an unreasonable length of time and not apply the asset or the proceeds from its sale toward liquidation of the debt. Moreover, it would be equally unfair to allow a creditor to take possession at all, if the creditor

never intended to dispose of the security. For during the period that the debtor is deprived of possession he may have been able to make profitable use of the asset or may have gone to far greater lengths than the creditor to sell. Once a creditor has possession he must act in a commercially reasonable manner toward sale, lease, proposed retention where permissible, or other disposition. (M.C.L.A. § 440.9504[1] [Stat.Ann.1964 Rev. § 19.9504(1)]). If such disposition is not feasible, the asset must be returned, still subject, of course, to the creditor's security interest. To the extent the creditor's inaction results in injury to the debtor, the debtor has a right of recovery. (See M.C.L.A. § 440.9501[1] [Stat.Ann.1964, Rev. § 19.9501(1)])."

Another opinion pertinent in this new field of law is Bradford v. Lindsey Chevrolet Company, Inc., 117 Ga.App. 781, 161 S.E.2d 904. The president of the creditor company testified the automobile was worth the amount sued for. The court wrote that if

"The Commercial Code itself applies here, the result is the same. See § 109A-9—501 et seq. of the Georgia Uniform Commercial Code. The action of the holder in legally repossessing the security under a conditional sale contract, the retention of the same without sale and without excuse for not selling, and without demand for payment of the contract, for a period of approximately 50 days before suit on the contract and for over 16 months from the time of filing suit to the time of trial, constituted a rescission and satisfaction of the contract and no recovery could be had thereon."

We recognize there was some talk about a settlement of the debt, but neither that nor the other claimed excuses for delay of a sale is of any merit. The excuses were either immaterial or not supported by the evidence, and they cannot be charged to Otten when he did nothing to prevent the enforcement of any rights under the security agreement. See also Braswell v.

American National Bank, 117 Ga.App. 699, 161 S.E.2d 420, where failure to give a notice of sale under the UCC was held wrongful and the security holder was denied recovery.

■ An opinion in a case of first impression in California, Atlas Thrift Company v. Horan, 1972, 27 Cal.App.3d 999, 104 Cal.Rptr. 315, is persuasive of our conclusion. There the defendant was liable for the debt of his son-in-law and the deficiency if the sale was in accordance with law; his defense to an action for a deficiency resulting from a sale of the property under a security agreement was that plaintiff did not send a written notice of the sale to him or his son-in-law, and it had not conducted the sale in a commercially reasonable manner under the California Commercial Code. Our SDCL 57-39-11 states: "reasonable notification [of the sale] * * * shall be sent * * * to the debtor". This requires a written notice. In an extended review of authorities and with reasoning in which we are in general agreement the California court wrote:

> "Plaintiff * * * failed to comply with * * * the Commercial Code in at least two respects. He failed to give the required notice and he failed to conduct the sale in a commercially reasonable manner. We hold this failure to be a bar to a deficiency judgment".

We equate failure to give notice as required by law where a sale is held to be of the same legal effect as where the creditor retains possession of the property for an unreasonable time (as the bank and Weiss did here) and takes no proceeding to conduct a sale. The resulting damage to the debtor is the same.

In Atlas Thrift Company v. Horan, supra, the creditor also made the claim that the remedies given to a debtor in § 9507 of the California UCC (our SDCL 57-39-17) were exclusive and barred any claim of damages not expressly provided for therein. The California court rejected the creditor's contention and permitted the debtor to claim damages by allowing his loss as a setoff to a deficiency judgment. The opinions cited above by granting relief other than that stated in SDCL 57-39-17 reach the same result.

A finding that title was delivered to the truck but not to the trailer is immaterial as the truck and trailer were sold on execution sale without such title and could have been so sold under the security agreement; failure to deliver the trailer title may have been a default in the agreement, but it was no reason to delay the sale under the security agreement.

■ The question of the amount of damages to be set off or the credit to which a debtor is entitled where the creditor has not proceeded in accordance with the provisions of law has been considered in several opinions. In Home Finance Company v. Ratliff, Ky.1964, 374 S.W.2d 494, the court wrote:

> "Ratliff (debtor) owed a balance of $501.14 on the original purchase * * *. The verdict placed the car's value at $900.00. Ratliff was deprived of the benefit of a public sale of the car under the advertised and normal circumstances. Appellant was remiss in its obligation to Ratliff to conduct a proper sale. Ratliff's damage could not exceed the market value of the car, less the sum due from Ratliff to Home Finance. Thus, the balance due Ratliff is $398.86, the difference between the market value of the car and his debt to Home Finance."

This seems to be the general rule—the value of the security less the debt. In Mallicoat v. Volunteer Finance & Loan Corp., 1966, 57 Tenn.App. 106, 415 S.W.2d 347, the trial judge found the debtor owed $340.12. After quoting T.C.A. § 47-9-507 (our SDCL 57-39-17, UCC 9-507(1) ), the Supreme Court said the trial judge had not found the value of the collateral so as to determine the debtors' loss, and it remanded the action to the trial court to determine

> "the amount still due plaintiff (the finance company), if any, after allowing defendants (debtors) an off set for the amount due them."

Our court, in principle, recognized this rule of damages in Erickson v. The Carlberg Company, 1929, 54 S.D. 296, 223 N.W. 195, when it said:

"for failure to comply with the requisites of the statute [as to chattel mortgage foreclosures], the measure of damages * * * is the value of the property * * * less the amount of the mortgage debt remaining unpaid."

Weiss obtained record title to the tractor and trailer as purchaser at the sheriff's sale under execution of the judgment on the note originally made to the bank. Otten did not deny that debt, and in this state of the record it is inappropriate to alter that judgment.

■ The failure of the bank and Weiss to proceed in a reasonable time and manner to comply with the statutes with reference to disposition of the collateral resulted in a loss to Otten for which he is entitled to damages. This is consistent with recovery of loss provided for when there is failure to comply with the UCC under the circumstances set out in SDCL 57-39-17. The only claim and evidence of damages resulted in a finding of the court that the value of the tractor and trailer was $2,500; from the complaints and other record it appears Otten owed $1,886.88 and $11.76 interest to April 4, 1969, a total of $1,898.64.

The trial court having erred in denying Otten's claim against the bank and Weiss for damages, the action is remanded with directions to enter a judgment for Otten against them for $601.36 with interest and costs from April 4, 1969.[2]

HANSON, WOLLMAN and DOYLE, JJ., concur.

WINANS, J., dissents.

WINANS, Justice (dissenting).

---

2. The note sued on was introduced in evidence. It was on a printed form payable to the bank. No assignment or endorsement by the bank to Weiss appears thereon. Neither did the trial judge make an endorsement on the note that it was merged in a judgment, which procedure was referred to in a recent opinion. Farmers and Merchants State Bank v. Mann, 87 S.D. 90 1973, 203 N.W.2d 173. This trial having occurred prior to that decision and these defects not having been raised, the judgment will not be reversed.

It is my opinion that the bank and Weiss complied with the requirements of the Uniform Commercial Code (U.C.C.) in foreclosing their security interest. Thus, for all of the reasons indicated below, I would affirm the decision of the trial court.

First of all, the steps taken by the bank to foreclose its security interest complied with the U.C.C. Pursuant to SDCL 57-39-8, as well as the terms of the security agreement, the bank had the right to possession of the collateral after Otten defaulted on the security agreement. After taking possession of the collateral, the bank sought to foreclose its security interest by bringing an action on the secured note. Such a judicial proceeding is specifically authorized by the U.C.C. as a method of foreclosing a security interest. SDCL 57-39-1. By bringing an action on the note, the bank did not waive its right to possession of the collateral under the security agreement. SDCL 57-39-1 specifically provides that the rights and remedies of the secured party are cumulative. Accordingly, until the debt is satisfied, a creditor may proceed with any number of remedies, so long as they are consistent. Olsen v. Valley National Bank of Aurora, 91 Ill.App.2d 365, 234 N.E.2d 547 (1968). The recovery of collateral by a secured party is consistent with his action on the underlying debt. In re Adrian Research and Chemical Company, D.C.E.D.-Pa., 169 F.Supp. 357 (1958). As such, the bank was acting within the provisions of the U.C.C. when it retained possession of the collateral after bringing an action on the note. See also "Election of Remedies on Default: Article 9 of the U.C.C." Duke L.J. (Fall 1959).

Furthermore, the disposition of the collateral was "timely". Under the U.C.C., no specific time is set within which the secured party must make a disposition of the collateral, except in the case of consumer goods which pursuant to SDCL 57-39-14 must be sold within ninety days after the secured party takes possession. See U.C.C. § 9-504, comment 6. In all other cases, the U.C.C. merely requires that the collateral be sold within a commercially reasonable period of time. SDCL 57-39-11. What constitutes a commercially reasonable time depends entirely on the facts and circumstances of each particular case.

In the present case, the lower court properly found that the

delay by the bank in disposing of the collateral was caused by a combination of justifiable factors, including an attempt by the bank to get the defendant to pay the delinquent installments, the bank's subsequent commencement of an action to obtain a money judgment, and the expected delay in bringing the matter to trial. In light of these factors, the evidence was sufficient to sustain the trial court's finding that the bank's delay in disposing of the collateral was reasonable under the circumstances.

I would also affirm the trial court's decision for the reason that the debtor, under the circumstances of this case, would not be entitled to damages even if the bank had failed to comply with the U.C.C. At the time of trial, the secured party was still in possession of the collateral.

SDCL 57-39-17 provides:

"If it is established that the secured party is not proceeding in accordance with the provisions of this chapter disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor * * * has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this chapter."

The remedy of Otten, under the above quoted statute, was to compel the bank to make a disposition of the collateral. The right to recover damages exists only where the collateral has already been disposed of by the secured party.