**FIRST NATIONAL BANK OF the BLACK HILLS, STURGIS, So. Dak. now Norwest Bank of Black Hills, N.A., Plaintiff and Appellee,**

v.

**Kenneth BEUG, Defendant and Appellant.**

**No. 15212.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 26, 1986.

Decided Feb. 11, 1987.

Michael Hickey of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for plaintiff and appellee.

Kenneth Beug, pro se.

MORGAN, Justice.

Kenneth Beug (Beug), defendant and appellant in this action, appeals from a summary judgment awarded to First National Bank of the Black Hills (Bank) and from the dismissal of Beug's counterclaim. We affirm the trial court on all issues.

Beug was a farmer and ran a large-scale farming operation near the city of Sturgis, South Dakota. Beug and Bank at various times negotiated loans, the proceeds of which were used for seed, machinery, equipment, and operating expenses. Beug's notes with Bank were secured through various security agreements on Beug's machinery, equipment, and crops. Copies of the most recent note, dated October 26, 1981, and the Uniform Commercial Code financing statements were attached to Bank's original complaint. Beug does not dispute the authenticity of the note or the financing statements. The most recent note became due on February 10, 1982. At the request of Beug, the note was extended by Bank to March 12, 1982. No payment was made on March 12, 1982, or thereafter, and Beug remains indebted to Bank at the time of this appeal. Beug sold his farm sometime prior to December 10, 1982, which was before the repossession of the property.

On April 18, 1983, Bank proceeded under the Uniform Commercial Code self-help provisions, SDCL 57A–9–503, and regained some of the secured property. Bank then brought this action to take possession of the other items of collateral. Bank repossessed the remaining equipment on July 17, 1983, pursuant to a court order. Subsequently, Bank filed an amended complaint which requested authority to sell the seized collateral and apply the proceeds to Beug's indebtedness. Bank also sought a judgment of deficiency against Beug in the event that the collateral was insufficient to cover the debt.

Beug responded to Bank's suit with a motion to dismiss and a counterclaim. Beug vigorously contested the lawfulness of Bank's repossession, and made repeated motions for return of the collateral. Beug continued to oppose the sale of collateral at least until July 16, 1984, when he filed a response opposing Bank's request for an order to hold a public sale. On August 31, 1984, the trial court issued an order allowing the sale, which took place on September 13, 1984. We also note that at least some of the equipment was placed on a private farm equipment sale lot in Sturgis prior to the public sale.

Although Beug's pro se briefs are long and somewhat confusing, we divine six issues of arguable merit. Firstly, Beug claims Bank's self-help repossession violated his due process rights under the United States Constitution. Secondly, Beug claims that Bank failed to prove that he was in default on the note and also failed to prove that Bank had a secured interest in the repossessed equipment. Thirdly, Beug claims that the repossession effectuated under the court order was unlawful since the sheriff was not involved. Fourthly, Beug claims that the trial court erred by not allowing him an exemption for grain under SDCL 43–45–2. Fifthly, Beug claims that the sale of collateral was unreasonable as defined by the Uniform Commercial Code since the sale took place fourteen to seventeen months after Bank came into possession of the property. Finally, Beug claims the trial court erred in dismissing his counterclaim since there were allegations sufficient to support the counterclaim. We find each of these issues to be without merit and affirm the decision of the trial court.

█ In his initial point of appeal, Beug claims that the self-help provisions of SDCL 57A–9–503 violate due process as guaranteed by the Fourteenth Amendment. To support this contention, he cites the case of *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). The citation to *Fuentes* is inapposite since there was no state action involved in the self-help remedy taken by Bank. This argument was raised with great frequency in the past, but has been roundly discredited by dozens of courts.*

Beug next claims that Bank failed to prove default on the note and also failed to prove that it had a security interest in the property seized. Generally speaking, Beug is correct in his contention that default and a secured interest must be present prior to repossession. We note here that the trial court made a specific finding of default on the part of Beug and also made a specific finding that Bank had a security interest in the property repossessed. Before reversing the trial court we must find clear error in these findings. *Bennett v. Jansma,* 329 N.W.2d 134 (S.D.1983).

We initially deal with the issue of whether Beug was in default on the note. The term "default" is not defined in the Uniform Commercial Code, thus, we must look to other sources for a definition.

* *Shirley v. State National Bank of Connecticut,* 493 F.2d 739 (2nd Cir.1974), *cert. denied,* 419 U.S. 1009, 95 S.Ct. 329, 42 L.Ed.2d 284; *Gibbs v. Titelman,* 502 F.2d 1107 (3d Cir.1974), *cert. denied,* 419 U.S. 1039, 95 S.Ct. 526, 42 L.Ed.2d 316; *James v. Pinnix,* 495 F.2d 206 (5th Cir.1974); *Turner v. Impala Motors,* 503 F.2d 607 (6th Cir.1974); *Bichel Optical Lab., Inc. v. Marquette Nat. Bk. of Mpls.,* 487 F.2d 906 (8th Cir.1973); *Nowlin v. Professional Auto Sales, Inc.,* 496 F.2d 16 (8th Cir.1974), *cert. denied,* 419 U.S. 1006, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974); *Adams v. Southern California First National Bank,* 492 F.2d 324 (9th Cir.1974), *cert. denied,* 419 U.S. 1006, 95 S.Ct. 325, 42 L.Ed.2d 282; *Kipp v. Cozens,* 40 Cal.App.3d 709, 115 Cal.Rptr. 423 (1974); *John Deere Company of Kansas City v. Catalano,* 186 Colo. 101, 525 P.2d 1153 (1974); *A & S Excavating, Inc. v. International Harvester C.C.,* 31 Conn.Supp. 152, 325 A.2d 535 (1974); *Giglio v. Bank of Delaware,* 307 A.2d 816 (Del. Ch.1973); *Northside Motors of Florida Inc. v. Brinkley,* 282 So.2d 617 (Fla.1973); *Hill v. Michigan Nat. Bank of Detroit,* 58 Mich.App. 430, 228 N.W.2d 407 (1975); *Messenger v. Sandy Motors, Inc.,* 121 N.J.Super. 1, 295 A.2d 402 (1972); *Brown v. United States National Bank of Oregon,* 265 Or. 234, 509 P.2d 442 (1973); *Cook v. Lilly,* 158 W.Va. 99, 208 S.E.2d 784 (1974). See J. Brodsky, *Constitutionality of Self-Help Repossession Under the Uniform Commercial Code: The Eighth and Ninth Circuits Speak,* 19 S.D.L.Rev. 295 (1973).

'Default' triggers the secured creditor's rights under Part Five of Article Nine. But what is 'default?' Article Nine does not define the word; instead it leaves this to the parties and to any scraps of common law lying around. Apart from the modest limitations imposed by the unconscionability doctrine and the requirement of good faith, default is 'whatever the security agreement says it is.'

J. White & R. Summers, Uniform Commercial Code § 26–22, at 1085–86 (2d ed. 1980). Beug's note with Bank provides an adequate definition of default.

In the event that the undersigned does not pay the interest on this Note when due ... or in the event that the undersigned shall suspend business, or in the event that the holder of this Note shall in good faith believe that the prospect of due and punctual payment of this Note is impaired, then, in such event, the holder of this Note may, at its option, declare this Note to be forthwith due and payable and thereupon this Note shall be and become due and payable, together with interest accrued hereon, without any presentment, demand, protest or other notice of any kind ....

It is clear from the foregoing quote that default occurs when, *inter alia,* the debtor does not pay interest on the note when due. There is no dispute among the parties on this issue. Beug freely admits that he did not pay the note or interest on the note when it came due.

Beug also contends that since Bank gave him an extension he is not in default on the note. While it is clear from the record that Bank did give Beug one thirty-day extension, there is no evidence to indicate that any other extensions were granted by Bank. As a result, we cannot say that the trial court was clearly erroneous in determining that Beug was in default.

Beug also disputes whether Bank has a security interest in the property seized. Beug does not deny that Bank originally had a security interest in the repossessed equipment. He now claims that Bank, by its subsequent actions, waived its previously existing security interest. Beug's contention stems from Bank's refusal to loan him further funds to make payments on the secured machinery or to plant a crop. Bank officials told Beug it was not "in Bank's best interest" to loan him any further funds. Beug claims that this statement amounted to a waiver of Bank's security interest. We consider this a makeweight argument. By way of this statement, Bank was merely telling Beug that they could no longer loan him money due to his current financial condition. Bank in no way waived any previously existing security interest.

Beug's next complaint centers around the repossession of his equipment subsequent to court order. On June 2, 1983, the trial court signed an order authorizing the Meade County Sheriff to seize Beug's machinery. In actuality, Bank repossessed the equipment using its own agents. Beug claims that since the sheriff was not involved the repossession was illegal, however, Beug does not cite a single authority to support his position that repossession by one other than the sheriff amounts to an unlawful repossession. As a result, he waived this issue. *First Nat. Bank of Minneapolis v. Kehn Ranch, Inc.,* 394 N.W.2d 709 (S.D.1986); *State v. Grooms,* 359 N.W.2d 901 (S.D.1984); *Corbly v. Matheson,* 335 N.W.2d 347 (S.D.1983); *State v. Shull,* 331 N.W.2d 284 (S.D.1983); *Graham v. State,* 328 N.W.2d 254 (S.D. 1982). In actuality, repossession by Bank may well have proven more economical than repossession by the sheriff inasmuch as no sheriff's fees were incurred. Furthermore, Beug shows absolutely no prejudice suffered by him as a result of Bank's repossession. He received a full and complete accounting as ordered by the court.

■ Beug, in his reply brief, attempts to show a breach of the peace during the court-ordered repossession. While there was conflicting testimony on this issue, we fail to see the significance of any breach of the peace that may have occurred. While the Uniform Commercial Code provides

that a creditor may be held responsible for damages resulting from a breach of the peace which occurs during *self-help* repossession, it does not so provide where the repossession is pursuant to a court order.

■ In his fourth claim, Beug alleges the trial court erred by not granting him an exemption for the 1,089 bushels of grain seized by Bank. Beug claims that under SDCL 21–19–18 and SDCL 43–45–2 he is entitled to return of the grain seized by Bank. SDCL 43–45–2 lists certain property that is absolutely exempt from all process, levy, or sale. SDCL 21–19–18 directs the court to "make an order allowing the exemptions as claimed and directing the release of such exempt property from levy" if certain conditions have been met. We need not decide whether the grain claimed by Beug is exempt under SDCL 43–45–2 since Beug did not comply with SDCL 21–19–10. Before the court is required to release property, the dictates of SDCL 21–19–9 through 21–19–13 must be met. We find that Beug did not meet the requirements of SDCL 21–19–10 since he failed to file a schedule of all of his property with his claim of exemption. Without this statement, his claim for exemption is fatally flawed. *Shriver-Johnson Co. v. Hargraves*, 54 S.D. 367, 223 N.W. 315 (1929).

■ Beug next contends that the trial court improperly granted the deficiency judgment to Bank. Initially, Beug claims that the judgment of deficiency was improper since there was no judgment on Bank's original complaint. This is simply not the case. The trial court granted summary judgment on Bank's original complaint on October 4, 1985. In the alternative, Beug argues that even if the deficiency was properly before the court, the court should not have included costs of preparing the equipment, interest costs during the sixteen months Bank was in possession of the equipment before sale, and costs of the sale. Beug claims that he should not be required to pay those expenses because Bank did not proceed in a commercially reasonable manner since it waited sixteen months to sell the equipment.

In support of this contention, Beug cites *Farmers State Bank of Parkston v. Otten*, 87 S.D. 161, 204 N.W.2d 178 (1973). *Otten* involved the repossession of a truck-tractor and trailer by the co-signer of the note. The co-signer was apparently acting in concert with the bank. The *Otten* collateral was sold some thirteen months after the co-signer took possession. *Otten* is clearly distinguishable from the case at hand. The actions of the bank and co-signer in *Otten* were clearly outside the requirements of the Uniform Commercial Code. "No proceedings were ever taken for sale or other disposition of the collateral under our Uniform Commercial Code...." *Otten*, 87 S.D. at 163, 204 N.W.2d at 179. The *Otten* court also held that the excuses for delay of the sale "were either immaterial or not supported by the evidence." *Id.* at 167, 204 N.W.2d at 181.

To determine the reasonableness of the sale involved in this case, we must look to the circumstances surrounding the repossession and subsequent sale. The sale itself was in accordance with the Uniform Commercial Code. The only questionable issue is the length of time between repossession and sale. Initially, we note that Beug vigorously contested the legality of the repossessions and made numerous motions for return of the collateral. It also appears from the record that Beug and Bank were negotiating during this fourteen to seventeen month period in an attempt to resolve the dispute. Furthermore, at least some of the equipment was placed on a private farm machinery sale lot in an attempt to effectuate a sale. Bank also alleges that the delay was necessary to wait for a season of the year that would be best for the sale of the farm items. In view of the foregoing, we affirm the trial court's determination that the sale was conducted in a commercially reasonable manner.

■ Beug's final point of contention is that the trial court erred in dismissing his counterclaim. Beug claims that he was unfairly prejudiced by the trial court's granting Bank's motion to dismiss prior to

Beug's filing of a brief on the matter. At a hearing conducted on August 31, 1984, Bank was given seven days in which to file a brief supporting its motion to dismiss. The trial court specifically asked Beug how much time he required to file his reply brief, to which Beug replied "two weeks." Beug's reply brief was not forthcoming within the two-week period, and the trial court ultimately sent a letter to the parties indicating his intention to grant Bank's motion on October 30, 1984. We believe seven weeks was ample time for Beug to file his brief. In any event, Beug offered strenuous oral arguments on the point during the August 31 hearing. We have carefully reviewed Beug's five counterclaims filed on June 19, 1984, and find them to be without merit, as the bulk of the counterclaims deal with the alleged commercially unreasonable sale of the repossessed collateral.

Having disposed of the foregoing issues, we affirm the trial court.

WUEST, C.J., SABERS, J., and FOSHEIM, Retired Justice, concur.

HENDERSON, J., concurs in result.

MILLER, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

HENDERSON, Justice (concurring in result).

Beug's complaints of Bank's wrongdoing are numerous. At first blush, Beug's briefs appear to be highly damaging to Bank's request for affirmance of a summary judgment.

Beug strenuously objects to a summary judgment herein, on a deficiency, because he maintains there was never actually a motion for summary judgment filed. Rather, he complains that the court treated a "Motion for Sale" as a Motion for Summary Judgment and cites *Olson v. Molko*, 86 S.D. 365, 195 N.W.2d 812 (1972), as authority. However, a check of the settled record in-dex clearly reflects that a Motion for Summary Judgment on Deficiency was filed on August 28, 1985, and two separate Motions to Dismiss or in the Alternative for Summary Judgment were filed, the first on May 25, 1984, and the second on July 5, 1984.

In concurring in result only, I am acting cautiously as there is obviously (a) self-help repossession and (b) court-ordered repossession. Factually, the background is that Bank first "self-helped" and later on, ostensibly acted under court order. However, it is not the first "self-help repossession" under SDCL 57A-9-503 which troubles me; rather, I am concerned with the repossession under the trial court's order of June 2, 1983, which ordered the Meade County Sheriff to seize Beug's property. Bank, however, took it upon itself to repossess the property. In doing so, Bank relied upon a "procedure that the Bank has with the local sheriff's office with regard to these kinds of matters so that the sheriff does not need to be involved in the actual repossession unless absolutely necessary to keep the peace." Bank's brief, at 11. Bank justifies the breach of peace which it committed, in my opinion, because of "usual practices established between that sheriff's office and the financial institutions." Bank's brief, *supra*. In this case, if I glean the facts correctly, Bank took it upon itself to remove certain equipment but, most importantly, to break a lock on a granary and to remove property that had been claimed as exempt, and all without the aid, assistance, or attendance of the sheriff.[1] In other words, although it was a court-ordered repossession, Bank turned it into a "self-help repossession." One would have to assume that if a trial judge orders something, that is to say, a course of action for repossession, the court order should be obeyed. A sheriff cannot devolve the duty to another litigant. And the litigant involved cannot enter into some cozy arrangement with the sheriff.

Beug cites the following authorities in opposition to this type of procedure. *Bloomquist v. First Nat'l Bank*, 378 N.W.2d

---

1. There appears to be no power granted by the trial court for Bank to act in such fashion.

81 (Minn.App.1985), which in turn cites *Laurel Coal Co. v. Walter E. Heller & Co.*, 539 F.Supp. 1006 (W.D.Pa.1982), for the general proposition "that the actual breaking of a lock or fastener securing property, even commercial property, constitutes a 'breach of the peace' * * *."[2] *Bloomquist*, 378 N.W.2d at 85 (quoting *Laurel Coal*, 539 F.Supp. at 1007). Beug also cites *Dixon v. Ford Motor Credit Co.*, 29 Ill. Dec. 230, 72 Ill.App.3d 983, 391 N.E.2d 493 (1979), for the statement of law that "a creditor's repossession in disregard of debtor's unequivocal oral protest may be found to be a breach of the peace." *Bloomquist*, 378 N.W.2d at 85. Beug advocates that the *Bloomquist* Court held that a creditor's use of self-help repossession is unlawful where it requires or constitutes a breach of the peace. 378 N.W.2d 81.

It appears that this *pro se* appellant, Beug, reached out for authority to support his position. I cannot agree with the majority opinion that Beug cited no authority to "support his position that repossession by one other than the sheriff amounts to an unlawful repossession. As a result, he waived this issue." Author citing majority opinion at 896.

In my opinion, Bank acted with unlawful repossession procedure (contrary to explicit court order) and committed a breach of the peace for which it is theoretically answerable in damages under the Uniform Commercial Code. *See* SDCL 57A–9–503. Yet, under the circumstances of this case, I would not hold it answerable in law for damages. Certainly, I do not wish to condone this repossession procedure by fully joining the majority opinion. Thus, I concur in result only.

In this case, there was a full and complete accounting, approved by the court, in which Beug had an opportunity for input. Also, Beug was given notice and opportunity to be heard *before* additional items of collateral (including grain) were seized by Bank; a meaningful hearing was granted unto him. As the United States Supreme Court has held: "What the Constitution does require is 'an *opportunity* [to be heard] granted at a meaningful time and in a meaningful manner....'" *Boddie v. Connecticut*, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113, 119 (1971) (emphasis in original) (citation omitted) (quoted in *State v. Weiker*, 366 N.W.2d 823, 834 (S.D. 1985) (Henderson, J., dissenting); *Daugaard v. Baltic Co-op. Bldg. Supply Ass'n*, 349 N.W.2d 419, 424 (S.D.1984); *McMacken v. State*, 325 N.W.2d 60, 62 (S.D.1982) (Dunn and Henderson, JJ., dissenting)).[3] Under the circumstances of this case, if I conceptually express that Bank acted with unlawful procedure, it does not follow, *ipso facto*, that summary judgment should not have been granted. Beug did have his "day in court" on the grain seizure. "Due process," aside from all else, means fundamental fairness. *Pinkerton v. Farr*, 220 S.E.2d 682, 687 (W.Va.1975). The constitutional guarantee of "due process" requires that law, in its regular course of administration, through courts of justice, as well as officers of the courts, shall not act arbitrarily, unreasonably, or capriciously. Further, the means selected shall have a real and substantive relation to the object sought to be achieved. *Nebbia v. New York*, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934).

Here, I am convinced that there was a technical violation of the law by Bank officials acting in private capacity, rather than having the sheriff do his bounden duty. This technical violation was not outrageous to such extent that Beug has a compensable cause of action in the law. Neither should these acts of repossession be blessed as a modicum of high example for

---

**2.** In *Bloomquist*, an off-duty highway patrolman, attorney, and a bank officer removed a cracked window pane that was taped shut and entered the debtor's gas station to seize secured items. The conduct was rather outrageous as compared to the conduct of Bank here. How-

ever, court-ordered repossession should not blossom into self-help repossession.

**3.** Author of this special writing notes that Beug began his opening brief with a due process argument and authorities.

financial institutions or sheriffs of this state to follow in the future.