No. 82-88

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

AVCO FINANCIAL SERVICES
OF BILLINGS ONE, INC.,

Plaintiff and Appellant,

vs.

DANIEL L. CHRISTIAENS, BEVERLY A.
CHRISTIAENS, MELVIN R. CHRISTIAENS,
LINDA K. CHRISTIAENS, ROBERT M.
RODMAN AND SUSAN A. RODMAN,

Defendants and Respondents.

Appeal from: District Court of the Second Judicial District,
In and for the County of Silver Bow
Honorable Arnold Olsen, Judge presiding.

Counsel of Record:

For Plaintiff:

John Leslie Hamner, Butte, Montana

For Defendants:

Maurice A. Maffei, Butte, Montana

Submitted on briefs: August 19, 1982

Decided: October 14, 1982

Filed OCT 14 1982

_____
                        Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Following the default by Daniel and Beverly Christiaens (Christiaens) on a loan ~~to~~ from AVCO Financial Services (AVCO), AVCO obtained a judgment against Christiaens for $8,575.19. AVCO brought a declaratory judgment action to determine if the judgment constituted a lien on certain Silver Bow County property. The District Court of the Second Judicial District for Silver Bow County entered a judgment finding there was no effective lien. We vacate that judgment.

The following issues will be considered on review:

(1) Is a secured party first required to dispose of collateral given for security of a debt in order to reduce the amount of the judgment before seeking an alternative remedy.

(2) If a junior encumbrancer purchases a senior encumbrancer's interest under a trust indenture and thereafter sells the property, does this constitute a foreclosure under Title 71, MCA, and is the secured party thereby precluded from pursuing further remedies.

AVCO loaned Christiaens a sum of money on June 8, 1978. As security for the loan Christiaens executed a promissory note and a security agreement in favor of AVCO which gave AVCO a lien on various household goods and on two older automobiles. AVCO also received a second trust indenture lien on real property on Excelsior Avenue in Butte owned by Christiaens. The first lien was held on this property by Nationwide Finance Company (Nationwide).

On September 28, 1979, the loan with AVCO was in default. AVCO filed an action against Christiaens and judgment was entered on November 1, 1979, by default against Christiaens for $8,575.19 plus costs and interest.

The obligation due Nationwide was also in default and Nationwide noticed foreclosure on its trust indenture on the Excelsior Avenue property. The sale was conducted on November 8, 1979, and AVCO, the second trust indenture lien holder, purchased the property at the trustee's sale. AVCO has subsequently sold the property on Excelsior Avenue at a loss.

On November 1, 1979, the date of entry of judgment against Christiaens, they also owned interests of record in land described as plat 170-B located in Silver Bow County. On March 28, 1980, Christiaens sold their tract 170-B land to defendants Rodman for $70,000--of which $8,611.19 was held back by Summit Valley Title Company pending final determination of AVCO by way of their judgment lien.

The first issue is whether a secured party is first required to dispose of collateral given for security of a debt in order to reduce the amount of the judgment before seeking an alternative remedy.

In order to secure the loan with AVCO, Christiaens gave AVCO a lien on a 1969 Oldsmobile, a 1972 Chevrolet pickup, and household goods and furniture. After default AVCO did not attempt to take possession of any of the security. Christiaens testified that he drove the Oldsmobile "until the front end ball joints were real bad" and that he "parked the car and eventually it was junked out." Christiaens also testified that the transmission went out on the Chevrolet pickup and that he "finally sold it for parts." Most of the household goods and furnishings were left in the house on Excelsior Avenue, but the Christiaens still had the washer and drier.

Mark Ayers, manager of the Butte AVCO office, testified that AVCO does not repossess a security if they feel that there was no way they would get their principal back by

doing so.

Christiaens contend that AVCO is first required to take possession of the collateral and first dispose of it in a reasonably commercial manner before attempting to acquire any deficiency and that since AVCO did not repossess any of the collateral it should be precluded from attempting to enforce its judgment on the sale of the tract 170-B land.

Section 30-9-504(1), MCA, provides: "A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition. . ." (Emphasis added.) In addition, section 30-9-501(1), MCA, provides: "When a debtor is in default under a security agreement, a secured party. . .may reduce his claim to judgment, foreclosure or otherwise enforce the security interest by any available judicial procedure." The Utah Supreme Court, in considering the same Uniform Commercial Code section allowed a secured party to "at its option, ignore that security [personal property] and satisfy its judgment from other property [real property] in the hands of the judgment debtor." Kennedy v. Bank of Ephraim (Utah 1979), 594 P.2d 881, 884.

"[T]he creditor can ignore his security interest and obtain a judgment on the underlying obligation and proceed by execution and levy." J. White & R. Summers, Uniform Commercial Code, at 962-963 (1972). It may not always be practical for the secured party to first take possession of the collateral and attempt to sell it if the value of the collateral has so diminished that the proceeds from resale would clearly be insufficient to satisfy the debt. It may then be to the secured party's advantage to proceed by judgment and execution because in that way he can reach assets in addition to the collateral and can eliminate the two-step process of first selling the collateral and then

-4-

suing for a deficiency.

We hold that a secured creditor is not required to first take possession and dispose of collateral before obtaining a judgment and execution upon other property owned by the debtor.

The second issue is if a junior encumbrancer purchases a senior encumbrancer's interest under a trust indenture and thereafter sells the property, does this constitute a foreclosure under Title 71, MCA, and is the secured party thereby precluded from pursuing further remedies.

As part of the collateral, AVCO received a second lien in the form of a trust indenture on property that Christiaens owned on Excelsior Avenue. Nationwide had the first lien also in the form of a trust indenture. On November 8, 1979, Nationwide foreclosed and the property was sold by bid in conformance with Title 71, MCA, regarding trust indentures. AVCO was the sole bidder for $7,856.61--the amount due on Nationwide's balance. AVCO then sold the property through a Butte realtor. AVCO received a gross sale price of $8,200 and after paying the taxes and selling expenses, AVCO netted approximately $6,711.

Christiaens contend that when AVCO bought and sold the Excelsior Avenue property, AVCO proceeded under Title 71, MCA, and is prevented from any further recovery because of a deficiency under section 71-1-317, MCA, which provides: "When a trust indenture executed in conformity with this part is foreclosed by advertisement and sale, no other or further action, suit, or proceedings shall be taken or judgment entered for any deficiency against the grantor. . ."

The contention on the part of Christiaens and the holding of the District Court suggests confusion as to the party who

in fact foreclosed. AVCO did not foreclose on the Excelsior Avenue property. Nationwide did foreclose on that property in accordance with the procedure under Title 71, MCA, the "Small Financing Act." At the sale conducted by Nationwide, AVCO bid on the property in the amount owed to Nationwide and AVCO then received a trustee's deed covering the Excelsior Avenue property. The title which AVCO received by that trustee's deed had no relationship to AVCO's junior trust indenture lien, or to AVCO's judgment lien. Section 71-1-318, MCA, describes the trustee's deed:

> "(3) The trustee's deed shall operate to convey to the purchaser, without right of redemption, the trustee's title and all right, title, interest, and claim of the grantor and his successors in interest and of all persons claiming by, through, or under them in and to the property sold. . ."

The trustee's deed in this case transferred the title originally held by Nationwide as trustee and including all right, title and interest of the Christiaens and all those claiming through them in and to the Excelsior Avenue property. Such trustee's deed has the affect of eliminating the AVCO trust indenture lien under its junior trust indenture, and also eliminating the AVCO judgment lien. As a result of the trustee's deed, AVCO became the owner of the Excelsior Avenue property with a right to sell the same in any manner it chose. Under section 71-1-317, MCA, relied upon by the Christiaens, Nationwide was prohibited from taking a deficiency judgment. That section in no way applied to AVCO as a purchaser. AVCO therefore had the right to sell the Excelsior Avenue property without regard to section 71-1-317, MCA. AVCO did suffer a loss of approximately $1,145 when it sold the Excelsior Avenue property, but AVCO is not attempting to recover from Christiaens any part of that loss. AVCO is only seeking to recover the amount of its judgment entered

on November 1, 1979, plus interest.

We hold that AVCO is entitled to a declaratory judgment establishing that its judgment of November 1, 1979, constituted a lien upon the land described as plat 170-B, Silver Bow County.

We vacate the judgment of the District Court in favor of the Christiaens, and direct the court to enter a judgment for AVCO in accordance with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices