**Darrel R. WAGNER and Teresa P. Wagner, husband and wife, and Darrel A. Wagner and Rose A. Wagner, husband and wife, Appellants (Defendants),**

v.

**WYOMING PRODUCTION CREDIT ASSOCIATION, a corporation, Appellee (Plaintiff).**

No. 87–48.

Supreme Court of Wyoming.

May 3, 1989.

Lawrence A. Yonkee of Redle, Yonkee & Arney, Sheridan, and Joseph E. Darrah of Joseph E. Darrah, P.C., Powell, for appellants.

Jerry A. Yaap of Bishop, Bishop & Yaap, Casper, and Richard E. Day of Williams, Porter, Day & Neville, P.C., Casper, for appellee.

Before CARDINE, C.J., THOMAS, URBIGKIT and MACY, JJ., and BROWN, Retired J.

BROWN, Justice, Retired.

The creditor, Wyoming Production Credit Association (WPCA), brought suit in the district court for a deficiency judgment. The evidence disclosed that when WPCA brought suit it had sold the personal property that secured the debt but retained the real property. WPCA was awarded a deficiency judgment after a jury trial and appellants (debtors) appeal.

Although appellants raise nine issues,[1] we need only address the following issue:

---

1. Issues raised by appellant:
   1. When the jury requested information concerning the special verdict form, which was not consistent with other instructions, did the trial court err by failing to give further instructions?

May a creditor recover a deficiency judgment for a debt secured by real and personal property when it has sold the personal property but retained the real property?

We answer that question in the negative and reverse the judgment of the trial court.

Appellants Darrel Roger Wagner (Roger) and Teresa Wagner (Teresa) became indebted to WPCA through several loan transactions when WPCA financed their ranching and farming enterprises. The indebtedness was evidenced by four promissory notes which were secured by livestock, feed, crops, machinery, construction equipment, a mobile home and other items of personal property. The first note was dated June 7, 1982, and recited an amount due of $667,971 on January 15, 1983. The second note, dated August 26, 1982, was for $4,000 and was due on January 15, 1983. The third note was executed on October 6, 1982 and recited an amount due of $15,000 on January 15, 1983. The fourth note, dated January 18, 1983, for $125,337 was due March 15, 1983. On January 26, 1983, the first three notes were extended to March 15, so that all of the notes became due on March 15, 1983.

Roger and Teresa began their farming operations in 1980 by purchasing the Whistle Creek Ranch located near Powell, Wyoming, which they owned subject to a mortgage in favor of WPCA. In the spring of 1982, Roger and Teresa desired to expand their farming operations, and they located a suitable ranch in Carter County, Montana, known as the Piney Creek Ranch. Roger requested WPCA to finance the purchase of the ranch and to advance the funds necessary to operate it, but WPCA refused to loan the Wagners any more money until a substantial sum was paid on their outstanding mortgage debt. At this time the Wagners owed WPCA approximately $600,000, with little repayment having been made on any of the loans.

In an effort to satisfy WPCA's requirements, Roger developed a plan involving his father, Darrel A. Wagner (Darrel). After looking at the property, Darrel agreed to provide the sum of $400,000 to operate the ranch if Roger was able to purchase it. Roger submitted a proposal to WPCA, which included the purchase of stock and equipment to operate the ranch with the $400,000 to be provided by Darrel, and the trading of Whistle Creek Ranch as a down payment. After reviewing the proposal, a WPCA officer agreed that the plan had possibilities and Roger made an offer to purchase the Piney Creek Ranch. The seller of the Piney Creek Ranch met with the WPCA officer, who informed the seller that the sale could be made if he agreed to provide WPCA written permission to take an assignment of the Wagners' interest in the ranch. A contract to purchase the property was executed on May 11, 1982.

Sometime during the negotiations and purchase of the ranch, it became apparent that Darrel did not have the $400,000 in

2. When the jury requested information concerning instruction number 21 defining promissory estoppel, did the trial court err by failing to give further instruction?

3. When the jury asked if it found Defendants liable, did it have to award the amounts claimed by WPCA, did the trial court commit reversible error by answering "yes"?

4. Does § 1–11–209, W.S.1977, require that the trial court furnish legal instruction to the jury when requested on matters bearing on the issues of the case and which influence the jury's decision for one party or the other?

5. Do juror confusion regarding the verdict form, failure to give information pursuant to § 1–11–209, error in an instruction concerning amount of WPCA recovery and dissent of one or more jurors to the verdict taken together require that the special verdict be set aside?

6. Concerning the terms of the Continuing Guaranty and loan clarification agreement in light of the circumstances shown by the evidence was the Wagners' promise to pay WPCA $400,000 a naked promise to pay the debt of another, which is not enforceable for lack of consideration?

7. Were Appellants entitled to amend their pleadings to conform to the evidence that WPCA had taken possession of security and accepted it in satisfaction of the debt?

8. Did WPCA by obtaining title to the Piney Creek Ranch pursuant to security arrangements and by retaining the ranch without selling it give up its' claim for a deficiency against Roger and Teresa Wagner?

9. Were Darrel and Rose Wagner relieved of any obligation on the Continuing Guaranty by WPCA obtaining title and retaining the Piney Creek Ranch?

liquid assets. Roger requested WPCA to loan the $400,000 to Darrel, but the request was refused because no new capital would be injected into the operation. On June 7, 1982, Darrel and his wife, Rose A. Wagner (Rose), executed and delivered a guaranty for the debt of Roger and Teresa up to the amount of $400,000. The purpose of the guaranty was disputed at trial. Darrel testified that he signed the guaranty with the understanding that, if he did so, WPCA would loan $400,000 to Roger and Teresa. The WPCA officer denied such an agreement, and testified that the guaranty was a written manifestation of an earlier verbal understanding and, apparently, enabled Roger to trade the Whistle Creek Ranch in the acquisition of the Piney Creek Ranch. In any case, WPCA did not advance any funds to operate the Piney Creek Ranch. However, Roger and Teresa commenced farming and ranching operations on the ranch, transferred some of the livestock and equipment from the Whistle Creek Ranch and moved a modular home onto the ranch.

On June 14, 1982, the Wagners and WPCA entered a loan clarification agreement. Under the agreement, Roger and Teresa agreed to sell some of their construction machinery and equipment by June 16, 1982, and to sell a ranch, known as the Cowley property, by August of 1982, with the proceeds to be applied to the debt. Darrel and Rose agreed to guarantee the loan to the extent of $400,000 and to sell certain of their property by January 15, 1983, with the proceeds to be applied toward the debt.

The same day, Roger and Teresa executed an assignment of their interest in Piney Creek Ranch to WPCA. A quitclaim deed was executed and placed in escrow. This quitclaim deed conveyed all of Wagners' interest in the Piney Creek Ranch to WPCA. The agreement provided that the assignment and quitclaim deed would be null and void if the assignors, the Wagners, paid all indebtedness owed to the assignee, WPCA; that if the Wagners defaulted on the contract for deed, WPCA could remedy the default and add any sum expended in curing the default to the amount owed

WPCA; and, if the Wagners defaulted on their loan or if WPCA was in need of additional money to liquidate the Wagners' indebtedness, WPCA could sell and dispose of the property and obtain a deficiency judgment.

The due date on the notes passed without the required payment being made. On June 17, 1983, WPCA filed a complaint in the district court requesting an order that all of the collateral listed in the security agreements and financing statements be delivered to WPCA for sale, that judgment be granted to WPCA against Roger and Teresa in the principal amount of $761,-607.92 plus interest, and that judgment be granted to WPCA against Darrel and Rose in the amount of $400,000 plus interest, costs and expenses. On September 12, 1983, the district court ordered all of the property described in the security agreements and financing statements—which did not include any interest in the Piney Creek Ranch—to be delivered to WPCA for sale. A sale was conducted, and the proceeds were applied to the debt, resulting in an amount remaining due of $759,607.12. While the proceedings were continuing, WPCA was informed, on February 21, 1984, that Roger and Teresa were in default on the Piney Creek Ranch contract for deed and that, if the default was not cured in thirty days, the default provision of the contract would be invoked. WPCA exercised its right under the assignment and, on May 24, 1985, paid off the remaining sum due on the contract of $451,491 and took possession of the Piney Creek Ranch. WPCA decided to retain the ranch and permit a credit for the appraised value against the debt owed. The Wagners did not raise any issue with regard to WPCA's failure to sell the ranch before attempting to obtain a deficiency judgment in any of their pleadings or at the pretrial conference.

At trial, an officer of WPCA disclosed that WPCA had retained possession of the Piney Creek Ranch and had applied a credit of $747,741 against the debt owed, which was the value their appraiser placed on the property at the time it paid the balance due

on the contract for deed. The officer also testified that the ranch had decreased in value by the time of trial to an estimated value of $400,000. The seller testified that he had listed the property at $1.2 million, and Darrel testified that he valued the property for tax purposes at $900,000.

At the close of the evidence, counsel for appellants made a motion to conform the pleadings to the evidence presented at trial. He also moved for a directed verdict on the basis that the evidence disclosed that WPCA had not sold all of the collateral that secured the debt owed before it had attempted to obtain a deficiency judgment. Both motions were denied. By special findings, the jury found Roger and Teresa liable for the sum of $592,477.41 plus accruing interest, and Darrel and Rose liable for $376,800.

Following entry of the judgment, the Wagners moved for judgment notwithstanding the verdict, and in the alternative, for a new trial. The motion for judgment notwithstanding the verdict argued that, as WPCA had retained the Piney Creek Ranch, it had elected to take the ranch in lieu of the right to obtain a deficiency. The court found that any issue of the failure to sell the Piney Creek Ranch was waived by the failure to raise it in the pleadings or at pretrial. Finally, the court found that it did not err in denying the Wagners' motion to amend their pleadings at the close of the evidence because WPCA had not expressly or impliedly given its consent to have that issue tried. To the extent that evidence on the issue was presented by WPCA, the court reasoned that it was presented on the issue of the debt owed. This appeal followed, arguing error in the judgment and the post-judgment decisions.

Because we find that the trial court erred in not granting a directed verdict when it was shown that WPCA had retained possession of the Piney Creek Ranch, we find it unnecessary to address any error with regard to the jury instructions. Likewise, it is unnecessary to address the Wagners' argument that the guaranty lacked consideration.

The application of the collateral, the Piney Creek Ranch property, to the debt by WPCA was accomplished without foreclosure in the traditional sense. That is to say, there was neither foreclosure of the Montana property by suit nor publication. WPCA's method of applying collateral to the debt in a sense resembles strict foreclosure.[2] Placing a deed in escrow to the collateral, executed by the debtor to the creditor, is a transaction sometimes used to avoid the expense and delay of a foreclosure in case of default. Cases under these circumstances rarely get to the appellate courts.

The transaction between the parties here is somewhat like a contract for deed. In such buy-and-sell agreements, usually a deed is placed in escrow with instructions to deliver the deed to the buyer when all the payments provided for in the contract for sale have been made. The escrow instructions further provide that the deed be returned to the seller in case of default.

Statutes and the body of law with respect to foreclosures by suit or by power of sale afford little guidance in the case here, nor does the body of law with respect to contracts for deed. The peculiar facts in this case do not fit into any of the traditional financial transactions involving the application of collateral to an obligation. In these circumstances, we are governed by

**2.** 59 C.J.S. Mortgages § 519 at 849 (1949) (footnotes omitted) defines strict foreclosure, stating: While it was formerly held that, in the absence of a statue to the contrary, a decree of strict foreclosure amounted to the payment of the mortgage debt without regard to the value of the premises, it is now well settled that, notwithstanding such a decree, the mortgagee [sic] may remain liable for a deficiency, although the taking of the property constitutes a pro tanto payment, and, if the value of the premises equals or exceeds the debt, the decree operates as full satisfaction and the mortgagee need not restore the excess. However, before the expiration of the time limited for redemption, the decree does not operate as a satisfaction of the debt either in whole or in part. Where the decree is rendered in pursuance of a stipulation that the land shall be taken in full satisfaction of it, the amount of the decree is immaterial.

the substance of what the parties agreed to. Anything said about cases involving foreclosure or other transactions involving security is only mentioned as secondary supporting logic.

In support of their position, appellants bring to our attention *Durdahl v. Bank of Casper*, 718 P.2d 23 (Wyo.1986) and *Eggeman v. Western National Bank*, 596 P.2d 318 (Wyo.1979). In *Eggeman*, the court set out five principal remedies given to a secured party upon default by the debtor. One of these remedies was to take possession of the collateral without judicial process and either accept it in full satisfaction or sell it. W.S. 34–21–964(b). In *Durdahl*, the creditor repossessed security and then proceeded to sue on the note without completing the foreclosure process. This court said:

> We cannot find anything in Wyoming law which allows a creditor to repossess collateral and do nothing with it, then commence suit on the underlying obligation. It seems that the creditor can only:
>
> 1. Repossess the collateral and sell it.
>
> 2. Repossess the collateral in satisfaction of the debt (also known as strict foreclosure). * * * see *Western National Bank of Casper v. Harrison*, Wyo., 577 P.2d 635 (1978); or
>
> 3. Obtain a judgment, then execute on the judgment, i.e., have the sheriff repossess the collateral.

*Durdahl*, 718 P.2d at 27 (citations omitted).

These two cases have limited value as precedent. They involve *personal* property and were decided with reference to the Uniform Commercial Code, W.S. 34–21–100 through 34–21–1002. However, much of what is said about applying security to the debt should apply for the same reasons when real property is involved.

Appellants say in their brief:

> The Piney Creek Ranch was located in the State of Montana. The Wagner assignment with a deed in escrow was a mortgage transaction under Montana law. A "mortgage is a contract by which specific property is hypothecated for the performance of an act, without

the necessity of a change of possession." § 71–1–101, M.C.A. and see 55 Am. Jur.2d, *Mortgages* § 71.

"Any interest in real property which is capable of being transferred may be mortgaged ..." § 71–1–201, M.C.A.

The Wagner assignment gave Plaintiff the right to sell the property. The applicable Montana Statute provides:

> When a mortgage confers a power of sale, either upon the mortgagee or any other person, to be executed after a breach of the obligation for which the mortgage is a security, either an action may be maintained under this power to foreclose or proceedings may be had under the provisions of the mortgage. § 71–1–223, M.C.A. Also see § 71–1–111, M.C.A.

Montana law requires notice of sales made pursuant to a power of sale. § 71–1–224, M.C.A.

Therefore, when the Wagners were in default, Plaintiff had the option of (1) foreclosing by suit, § 71–1–222, (2) exercising a power of sale under the mortgage, § 71–1–223, (3) obtain judgment for full amount of the obligation and execute on other property, see *Avco Financial Services of Billings One, Inc. v. Christiaens*, [201 Mont. 117] Mont. 652 P.2d 220 (1982), or (4) accepting the property in full satisfaction of Wagners' obligation, § 30–9–505 M.C.A. which is a UCC provision. Although the code applies to security interests created by assignment, § 30–9–102, M.C.A., § 30–9–104, M.C.A. excludes from Article 9, transfers of interest in real estate. However, the buyer's interest under a contract for deed which is set forth on a security instrument creates an equitable mortgage in land and thus a security interest in real property which is subject to foreclosure. See *Garnett State Sav. Bank v. Tush*, [232 Kan. 447] Kan., 657 P.2d 508. [(1983)] Nevertheless, we can find nothing in Montana law which permits the creditor to take possession of security, accept it and then maintain an action for a deficiency. If the buyer's interest under a contract for deed is

treated as a real property interest, then WPCA has brought about a strict foreclosure which discharges the debt.

While the cases cited and the brief summary of Montana law on mortgages supplied by appellants have minimal value in this case, these cases and law summary do give some support to appellants' claim that nothing could be found in Wyoming or Montana law allowing a creditor to take possession of security, failing to complete the foreclosure or failing to sell the property, and then obtain a deficiency judgment.

Except to advise us that the Uniform Commercial Code does not apply to the circumstances of this case, appellants say very little about the real issue, that is, whether a deficiency judgment can be had without first selling the secured property in order to determine the amount of the deficiency. Rather, appellants argue vigorously that we should not consider this issue because it was not raised in the pleadings or at pretrial conference, nor was it tried in the jury trial.

Although we agree with WPCA that the decision in this case is not controlled by Uniform Commercial Code—Secured Transactions, we remain unpersuaded that it could obtain a deficiency judgment while it retained possession of the Piney Creek Ranch. The agreement of the parties with respect to the recovery of a deficiency for the debt secured by the Wagners' interest in the Piney Creek Ranch is set forth in the assignment of the contract for deed, which provides:

> In the event of a default in payment of the indebtedness hereby intended to be secured, or in the event Assignee is in need of additional money to liquidate Assignors' indebtedness hereby intended to be secured, *it shall be lawful for Assignee to sell and dispose of the above-described premises* and out of the money arising from the sale, to retain the unpaid balance of principal and accrued interest, together with costs and expenses of sale, including a reasonable attorney's fee, with any surplus to be paid to Assignors *and with any deficiency to be paid to Assignee by Assignors.*

(Emphasis added.) This language plainly states that a deficiency judgment could be obtained in the event that a sale of the property rendered an amount that was less than the debt owed. No evidence was presented that the parties agreed that an appraised value could be substituted for the required sale, and we find nothing in the agreement that expresses any intent other than that an actual sale was required before a deficiency could be obtained.

Even if we treated the assignment as a form of an equitable mortgage, see generally E. Rudolph, *The Wyoming Law of Real Mortgages,* Ch. 10 at 147–62 (1969), the result would be the same under either Wyoming or Montana law. We recently held in *Fitch v. Buffalo Federal Savings and Loan Association,* 751 P.2d 1309 (Wyo.1988) that a mortgagee, who forecloses by advertisement and sale, could obtain a deficiency judgment if the proceeds of the sale were not sufficient to cover the debt. Implied, if not expressed, in that decision and the statutes relating to the rights of a mortgagee on foreclosure (W.S. 34-4-104 through 34-4-113), is a requirement that there first be a sale of the land. Montana's law, as explained in *Fitch,* is more restrictive in permitting a foreclosure and sale to obtain a deficiency judgment. We hold that without a sale of the property, WPCA had no legal or equitable right to a deficiency judgment.

Although WPCA cites no law that demonstrates it was entitled to the deficiency judgment, it strenuously urges this court not to address the issue. WPCA was successful in convincing the trial court that the issue had been waived by the Wagners' failure to raise it as an affirmative defense in the pleadings and that it was not tried by the express or implied agreement of WPCA. We need not address whether the trial court abused its discretion in denying the Wagners leave to amend the pleadings to conform to the evidence because we find that WPCA failed to carry its burden to show that any deficiency was owed. See generally 6 C. Wright & A. Miller, Federal Practice and Procedure, §§ 1491–1495 at 453–82 (1971). Once the evidence demon-

strated that WPCA had not sold the property for an amount less than the debt owed, the district court had no recourse but to grant the Wagners' motion for a directed verdict. An appraisal cannot be a substitute for a sale when an unambiguous contract specifies a sale. As the debt of Darrel and Rose was as guarantors for the debt of Roger and Teresa, the failure to present any evidence that Roger and Teresa owed a deficiency required a finding that Darrel and Rose were not liable as guarantors. See 39 Am.Jur.2d Guaranty § 78 at 1085 (1968).

This case is reversed and the district court is directed to enter a directed verdict and judgment in favor of appellants.